**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **v.** | § | **No. 1:21-cr-6-HSO-RPM-1** |
| | § | |
| | § | |
| **KENNETH BRYAN RITCHEY** | § | |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT**
**KENNETH BRYAN RITCHEY'S MOTION [53] TO DISMISS COUNTS 3-6 OF**
**THE SUPERSEDING INDICTMENT [33]**

BEFORE THE COURT is Defendant Kenneth Bryan Ritchey's Motion [53] to

Dismiss Counts 3-6 of the Superseding Indictment [33]. This Motion is fully briefed.

After due consideration of the Motion [53], the record, oral arguments of counsel

made at the hearing held on April 14, 2022, and relevant legal authority, the Court

finds that the Motion [53] should be denied.

## I.  BACKGROUND

On January 12, 2021, a Grand Jury returned a four-count Indictment [3]

against Defendant Kenneth Bryan Ritchey ("Defendant" or "Ritchey") charging him

with conspiracy to commit wire fraud and mail fraud in violation of 18 U.S.C. § 1349

(Count 1); conspiracy to defraud the United States in violation of 18 U.S.C. § 371

(Count 2); conspiracy to hoard designated scarce materials in violation of 18 U.S.C.

§ 371 (Count 3); and hoarding designated scarce materials in violation of 50 U.S.C.

§§ 4512 and 4513 (Count 4). Ind. [3] at 15-24.

The Government continued its investigation of Ritchey and on September 21, 2021, the Grand Jury returned the present Superseding Indictment [33] in this case, charging Ritchey with six counts: conspiracy to commit health care fraud and wire fraud in violation 18 U.S.C. § 1349 (Count 1); false statements relating to health care matters in violation of 18 U.S.C. §§ 1035 and 2 (Count 2); conspiracy to commit wire fraud and mail fraud in violation of 18 U.S.C. § 1349 (Count 3); conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (Count 4); conspiracy to hoard designated scarce materials in violation of 18 U.S.C. § 371 (Count 5); and hoarding designated scarce materials in violation of 50 U.S.C. §§ 4512 and 4513 (Count 6). Sup. Ind. [33] at 23-35.

According to the Superseding Indictment [33], Ritchey operated and controlled Gulf Coast Pharmaceuticals Plus, LLC ("GCPP"), "a pharmaceutical wholesale company . . . that supplied pharmaceutical products" to various health care providers, "including those administered by the United States." *Id.* at 1, 10-11. From January 2020 to April 2020, Ritchey and his co-conspirators allegedly participated in a scheme to defraud the United States through the United States Department of Veterans Affairs ("VA") and other health care providers, by:

> (a) acquiring and hoarding PPE and other designated materials;
>
> (b) soliciting health care providers, including VA health care facilities, to purchase [personal protective equipment ("PPE")] and other designated materials at inflated prices, in excess of prevailing market prices . . . through high-pressure sales tactics and through the omission of  GCPP's actual costs and sources of PPE and other designated materials;

(c) misrepresenting to health care providers, including VA health care facilities, through interstate wire transmissions, that the excessive prices of PPE and other designated materials were reasonable due to cost increases;

(d) selling and shipping, via interstate carrier, PPE and other designated materials to health care providers, including VA health care facilities;

(e) submitting and causing the submission of invoices and claims detailing the excessive prices to health care providers, including VA health care facilities, for the sale of PPE and other designated materials; and

(f) receiving and obtaining payments, through interstate wire transmissions, from health care providers, including VA health care facilities, based on the invoices and claims submitted.

*Id.* at 17.

On February 25, 2022, Ritchey filed the present Motion [53] to Dismiss Counts 3-6 of the Superseding Indictment [33]. Ritchey asserts that Counts 3 and 4 fail to allege conduct that constitutes a conspiracy to commit wire or mail fraud or a conspiracy to defraud the United States because they "do not allege an agreement to accomplish an unlawful act." Mot. [53] at 12 (emphasis removed). Ritchey contends that Counts 5 and 6 are void-for-vagueness because the phrase "prevailing market price," as used in 50 U.S.C. § 4512, is unconstitutionally vague. *Id.* at 1, 21.

The Government takes the position that Ritchey's Motion [53] should be denied. Resp. [61]. It argues that Ritchey's Motion [53] inappropriately asks the Court to go beyond the allegations in the Superseding Indictment [33] as to Counts 3 and 4, and it contends that these Counts sufficiently plead conspiracies to commit wire and mail fraud and to defraud the United States. *Id.* at 5-15. The Government

maintains that Counts 5 and 6 are not void because § 4512 "provides sufficient notice of the conduct it prohibits." *Id*. at 17.

In Reply [68], Ritchey argues that the Court need not go beyond the allegations in the Superseding Indictment [33] to dismiss Counts 3 and 4, because the alleged misrepresentations and omissions in Counts 3 and 4 are immaterial as a matter of law. Reply [68] at 2-5. Ritchey reasserts his argument that the phrase "prevailing market price" is unconstitutionally vague as applied to this case and attempts to distinguish the cases relied upon by the Government. *Id*. at 6-7.

On April 14, 2022, the Court held a hearing on the Motion [53] and heard argument from both parties. Min. Entry, Apr. 14, 2022.

## II.  DISCUSSION

A.    Counts 3 and 4

1.    Relevant legal standard

Ritchey seeks dismissal of Counts 3 and 4 on grounds that they omit an essential element of the offenses charged in each Count. Mot. [53] at 12-21. He does not argue that Counts 3 and 4 fail to fairly apprise him of the charges against him, nor does he contend that their wording presents a risk of future prosecutions on the same offenses. *Id*.

"[A] motion to dismiss an indictment for failure to state an offense is a challenge to the sufficiency of the indictment," and at this stage the Court must "take the allegations of the indictment as true and . . . determine whether an offense has been stated." *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004)

4

(quoting *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998)). The Court may not consider evidence beyond the allegations contained in the indictment in evaluating a motion to dismiss. *See United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975) (holding that a defendant may not challenge an indictment "on the ground that the allegations are not supported by adequate evidence"); *United States v. USPlabs, LLC*, 338 F. Supp. 3d 547, 580 (N.D. Tex. 2018) (applying *Mann*).

To be sufficient, "[a]n indictment must allege each element of the charged offense, in order to [ensure] that the grand jury finds probable cause that the defendant committed each element, to prevent double jeopardy, and to provide notice to the accused." *United States v. Bishop*, 264 F.3d 535, 545 (5th Cir. 2001). Accordingly, an indictment is legally sufficient if "(1) it contains the elements of the offense charged, (2) it 'fairly informs' the defendant of the charge he must meet, and (3) there is no risk of future prosecutions for the same offense." *United States v. Masha*, 990 F.3d 436, 443 (5th Cir. 2021) (quotation omitted).

"Generally . . . an indictment that closely tracks the language [of the statute] under which it is brought is sufficient to give a defendant notice of the crimes with which he is charged." *United States v. Richard*, 775 F.3d 287, 292 (5th Cir. 2014) (quotation omitted). "An indictment need not list every particular of the offense. Instead, it simply needs to allege each element of the crime in a way that allows the accused to prepare his defense and invoke the Double Jeopardy Clause in a subsequent proceeding." *Id.* (quotation omitted).

"[T]he validity of an indictment is governed by practical, not technical considerations," *United States v. Rainey*, 757 F.3d 234, 247 (5th Cir. 2014) (quotation omitted), and an indictment that "tracks the language of the statute and additionally provides . . . factual allegations that 'permit . . . no misapprehension as to the elements of the offense charged'" is sufficient, *id.* at 248 (quotation omitted).

2.    Count 3

a.    Count 3 sufficiently alleges the conspiracy

Count 3 charges Ritchey with conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 1349. Sup. Ind. [33] at 26-27. To support a conviction for conspiracy under § 1349, the Government must prove, and the indictment must allege, that: "(1) two or more persons agreed to commit fraud; (2) the defendant knew the unlawful purpose of the agreement; and (3) the defendant joined the agreement with the intent to further the unlawful purpose." *United States v. Beacham*, 774 F.3d 267, 272 (5th Cir. 2014) (citation omitted).

For the first element, the indictment must allege an agreement to commit the underlying fraud offense. *See United States v. Hoffman*, 901 F.3d 523, 542 (5th Cir. 2018). The elements of wire fraud under 18 U.S.C. § 1343 are: "(1) a scheme to defraud and (2) the use of, or causing the use of, wire communications in furtherance of the scheme." *United States v. Stalnaker,* 571 F.3d 428, 436 (5th Cir. 2009) (quoting *United States v. Ingles,* 445 F.3d 830, 838 (5th Cir. 2006)). Similarly, to prove mail fraud under 18 U.S.C. § 1341, the Government must prove: "(1) a scheme to defraud (2) which involves a use of the mails (3) for the purpose of

executing the scheme." *United States v. Mann*, 493 F.3d 484, 493 (5th Cir. 2007) (quoting *Ingles,* 445 F.3d at 835)). However, "an indictment for conspiring to commit an offense-in which the conspiracy is the gist of the crime-it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." *United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013) (quoting *United States v. Graves,* 669 F.2d 964, 968 (5th Cir. 1982)).

The Superseding Indictment [33] sets forth factual details regarding the agreement Ritchey allegedly entered into, his understanding of the unlawful purpose of the agreement, and his joinder in it to further that purpose. *See* Sup. Ind. [33] at 17-23, 26-27. Ritchey does not contest these elements of the conspiracy charge in Count 3, instead centering his argument on the Superseding Indictment's [33] purported failure to allege an agreement to commit an illegal offense. Mot. [53] at 8-20.

Count 3 asserts that Ritchey "conspire[d] and agree[d]" with others to commit wire and mail fraud through devising "a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made." Sup. Ind. [33] at 26-27. Count 3 also incorporates the facts underlying this charge, as set forth earlier in Paragraphs One, Three, Four through Twenty-six, and Thirty-six through Fifty of the Superseding Indictment [33], including a description of the individuals and entities

involved, an overview of the scheme, and a timeline of the COVID-19 pandemic and declaration of a national public health emergency. *Id*. at 1-7, 10-12.

In addition, the manner and means by which this scheme and artifice to defraud were carried out is set forth in Paragraphs Eighty through Ninety-six. *Id*. at 27. Specifically, it is alleged that GCPP's sales representatives, acting at Ritchey's direction, made several "materially false and fraudulent pretenses, representations, and promises," *id*. at 26-27, to VA and other health care providers including: (1) quoting for sale PPE and other designated scarce materials at prices that exceeded the prevailing market prices; (2) engaging in "high pressure sales tactics;" (3) omitting GCPP's actual costs for these materials; (4) omitting "from where GCPP acquired" these materials; and (5) presenting these healthcare providers with correspondence that attempted to "mislead them to believe that there was a direct relationship" between the costs of these materials and the quoted prices, *id*. at 21-22.

Finally, Count 3 alleges that Ritchey utilized wire communications and interstate carriers in furtherance of the scheme, *id*. at 21-23, and that the purported purpose of the scheme was for Ritchey and his co-conspirators "to unlawfully enrich themselves," *id*. at 27; *see also id*. at 12, 17 (explaining that Ritchey, through GCPP, was selling PPE and other designated materials for excessive amounts as compared to what they paid for these items).

The Court finds that the language contained in Count 3 tracks the wording used in 18 U.S.C. §§ 1349, 1343, and 1341, *see Richard*, 775 F.3d at 292, and sets

forth factual allegations that preclude any misapprehension as to the elements of conspiracy to commit wire and mail fraud, *see Rainey*, 757 F.3d at 248. As such, Count 3 of the Superseding Indictment [33] sufficiently pleads the offense charged.

b.      Count 3 also sufficiently alleges the underlying offenses

Ritchey asserts that the Superseding Indictment [33] must allege that he made material misrepresentations and omissions such that he engaged in a scheme to defraud in order to sufficiently state the conspiracy offense charged in Count 3. Mot. [53] at 9-10, 15-18; Reply [68] at 2. A scheme to defraud is an essential element of both wire fraud, *see Stalnaker,* 571 F.3d at 436, and mail fraud, *see Mann*, 493 F.3d at 493, but it is not required to allege a conspiracy commit these offenses, *see Beacham*, 774 F.3d at 272. The Fifth Circuit has recognized the principle that an indictment charging conspiracy to commit an offense need not "allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." *Lawrence*, 727 F.3d at 397 (quoting *Graves,* 669 F.2d at 968); *see also Wong Tai v. United States*, 273 U.S. 77, 81 (1927) (citations omitted) (holding that "it is not necessary . . . to state [the] object [of the conspiracy] with the detail which would be required in an indictment for committing the substantive offense"). As such, the Superseding Indictment [33] need not allege that Ritchey engaged in a scheme to defraud with the level of detail as would be required to allege the substantive offenses of wire and mail fraud.

Nonetheless, Count 3 also sufficiently alleges a scheme to defraud. To do so an indictment must allege that the defendant "made some kind of false or

fraudulent material misrepresentation." *United States v. Spalding*, 894 F.3d 173, 181 (5th Cir. 2018) (quoting *United States v. Harris*, 821 F.3d 589, 598 (5th Cir. 2016)). "In general, a false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the party to which it was addressed." *United States v. Curtis*, 635 F.3d 704, 720 n.51 (5th Cir. 2011) (quoting *Neder v. United States*, 527 U.S. 1, 16 (1999)).  This standard is satisfied where "the facts alleged in the indictment warrant an inference that the false statement is material."  *United States v. Bieganowski*, 313 F.3d 264, 285 (5th Cir. 2002) (quoting *United States v. McGough,* 510 F.2d 598, 602 (5th Cir. 1975)). Under this test, "[m]isleading omissions qualify as false representations." *United States v. Scully*, 951 F.3d 656, 671 (5th Cir. 2020) (citing *Pasquantino v. United States*, 544 U.S. 349, 357 (2005)).

Ritchey contends that, as to both the VA and non-VA health care providers, the misrepresentations alleged in the Superseding Indictment [33] are immaterial. Mot. [53] at 15-17; Reply [68] at 3. With respect to the sale of PPE and other scarce materials to VA facilities, Ritchey also maintains that under the Federal Acquisition Regulations ("FAR") the alleged misrepresentations could not have been legally material to the VA's decision to purchase these items from GCPP. Mot. [53] at 15-17.

Count 3 alleges that Ritchey and his co-conspirators made several "materially false and fraudulent pretenses, representations, and promises" to VA and non-VA health care providers as part of the scheme to defraud. Sup. Ind. [33] at 26-27; *see*

*also id.* at 21-22 (listing the material misrepresentations).[1] Count 3 also asserts that these health care facilities purchased PPE and other designated scare materials from GCPP. *Id.* at 21-23. The Court concludes that these allegations support an inference of materiality, which is sufficient to plead a scheme to defraud. *See Bieganowski*, 313 F.3d at 285. Specifically, the Court finds that the Superseding Indictment [33] sufficiently alleges that GCPP's sales representatives' emails, letters, and telephone communications to the VA and non-VA health care providers had a "natural tendency" to affect the decision to purchase these items, and this could be proven by the Government at trial to have been material to these entities' decision to purchase these items from GCPP. *See United States v. Evans*, 892 F.3d 692, 713 (5th Cir. 2018). That is all that is required at this stage. *Bieganowski*, 313 F.3d at 286 (explaining that "the proper inquiry is whether the allegation is 'potentially capable of being proved material by the government at trial,' and whether the allegation is sufficient to support an inference of materiality") (quotation omitted).

Whether the allegedly false and fraudulent pretenses, representations, and promises were in fact material to the VA's decision to purchase PPE and other designated scare items under the FAR involves determinations of fact which are inappropriate on a motion to dismiss. *United States v. Fontenot*, 665 F.3d 640, 644

---

[1] The alleged material misrepresentations include: (1) quoting for sale PPE and other designated scarce materials at prices that exceeded the prevailing market prices; (2) engaging in "high pressure sales tactics;" (3) omitting GCPP's actual costs for these materials; (4) omitting "from where GCPP acquired" these materials; and (5) presenting these healthcare providers with correspondence that attempted to "mislead them to believe that there was a direct relationship" between the costs of these materials and the quoted prices. Sup. Ind. [33] at 21-22.

(5th Cir. 2011) ("The propriety of granting a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact . . . . If a question of law is involved, then consideration of the motion is generally proper.") (quotation omitted). As such, the Court finds Ritchey's fact-intensive arguments unavailing.[2]

Ritchey further argues that GCPP's failure to divulge its actual costs for the materials sold and where they were acquired cannot form the basis of a scheme to defraud because neither Ritchey nor GCPP was under a duty to disclose this information. Mot. [53] at 17-18. This argument is contrary to recent Fifth Circuit precedent, which has held that a material omission can constitute fraud even absent a duty to disclose. *See United States v. Swenson*, 25 F.4th 309, 318 n.3 (5th Cir. 2022) (collecting cases where omissions where sufficient to support mail fraud convictions where the defendant was not under a duty to disclose); *United States v. Plato*, 593 F. App'x 364, 369 (5th Cir. 2015) (rejecting the defendant's argument that a duty to disclose was required for an omission to be material and noting that "an omission's materiality determines whether its nondisclosure can serve as a basis for fraud"); *Scully*, 951 F.3d at 671 ("Misleading omissions qualify as false representations.") (citation omitted). As such, the Court rejects this argument.[3]

---

[2] Ritchey also argues that Count 3 fails to sufficiently allege that he had the specific intent to defraud because the "purported misrepresentations could not have been material to the decision to purchase PPE from GCPP." Mot. [53] at 12. Because the Court has found that the alleged misrepresentations raise an inference of materiality, it also rejects this argument.

[3] Ritchey cites the Fifth Circuit's decision in *United States v. Harris* that "[n]ondisclosure can constitute proof of a scheme to defraud only where the defendant is under a duty to disclose" for the proposition that a duty to disclose is a prerequisite for finding that an omission was material. 821

Ritchey next asserts that, to the extent Count 3 charges him with selling designated scarce materials in excess of prevailing market prices, it fails to allege an agreement to commit an illegal offense. Mot. [53] at 12-15. One of the material misrepresentations alleged in the Superseding Indictment [33] is that GCPP's sales representatives quoted PPE and other designated scarce materials for sale at prices that exceeded the prevailing market prices. Sup. Ind. [33] at 21. The Defense Production Act, 50 U.S.C. § 4501, et seq. ("DPA"), prohibits the hoarding of "materials which have been designated by the President as scarce materials or materials the supply of which would be threatened by such accumulation" by those whose purpose is to resell them "at prices in excess of prevailing market prices." 50 U.S.C. § 4512. The DPA's prohibition on hoarding certain materials is the subject of Counts 5 and 6 of the Superseding Indictment. Sup. Ind. [33] at 31-35.

Ritchey notes that it was not illegal to sell PPE and the other materials identified in the Superseding Indictment [33] in excess of prevailing market prices until March 30, 2020, when the list of designated materials was published in the Federal Register. Mot. [53] at 13; *see also* 85 Fed. Reg. 17,592 (Mar. 30, 2020) (listing the materials designated as scarce under § 4512); 50 U.S.C. § 4512 ("The President shall order published in the Federal Register . . . every designation of

F.3d 589, 600 (5th Cir. 2016) (citing  *United States v. Gaspard,* 744 F.2d 438, 440 (5th Cir. 1984); *United States v. Ballard,* 663 F.2d 534, 540-41 n.16 (5th Cir. 1981)). *Harris* is contrary to the Fifth Circuit's more recent decision in *Swenson* which is controlling precedent this Court must follow. *See J2 Resources, L.L.C. v. Wood River Pipe Lines, L.L.C.*, No. 4:20-CV-2161, 2020 WL 4227424, at *9 (S.D. Tex. July 23, 2020) (recognizing the principle that the Fifth Circuit's most recent decision is controlling authority that district courts in this Circuit must follow). Nevertheless, the Superseding Indictment [33] alleges material misrepresentations sufficient to state a scheme to defraud, even without including GCPP's omission of its actual costs or where it acquired the materials sold.

13

materials the accumulation of which is unlawful . . . ."). He also argues that there is no general federal price-gouging law, Mot. [53] at 12-13, and contends that "[n]one of the conduct that the indictment alleges occurred prior to March 30, 2020 can constitute an act in furtherance of a conspiracy to carry out a scheme to defraud," *id*. at 14.

Ritchey misapprehends the charge in Count 3 because it does not advance a conspiracy to commit price-gouging or a conspiracy to violate § 4512, but instead charges Ritchey with conspiracy to commit wire and mail fraud. Sup. Ind. [33] at 26-27. The price quotes referenced in Count 3 as being provided by GCPP's sales representatives are merely part of the alleged scheme to commit wire and mail fraud. *Id*. at 21-22, 26-27. As such, whether or not that conduct was also prohibited by § 4512 does not control whether Count 3 sufficiently charges a conspiracy to defraud in violation of § 1349. Ritchey's Motion [53] should be denied with respect to Count 3.

3.   Count 4

Count 4 charges Ritchey with conspiracy to defraud the United States in violation of 18 U.S.C. § 371. Sup. Ind. [33] at 27-31. To sustain a conviction for a conspiracy under 18 U.S.C. § 371, the Government must prove, and the indictment must allege, "(1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy." *United*

14

*States v. Tinghui Xie*, 942 F.3d 228, 240 (5th Cir. 2019) (quoting *United States v.*

*Coleman*, 609 F.3d 699, 704 (5th Cir. 2010)). Ritchey challenges the sufficiency of

Count 4 on grounds that it fails to allege a conspiracy to defraud the VA. Mot. [53]

at 20; Reply [68] at 5.

> Count 4 claims that between January 2020 and April 17, 2020, Ritchey
>
> knowingly and willfully, that is with the intent to further the object of the conspiracy, conspire[d] and agree[d] with . . . [others], to defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the . . . [VA] in its procurement of PPE and other designated materials at fair and reasonable prices and in its administration of its VA health care facilities.

Sup. Ind. [33] at 28. The purported purpose of this scheme was for Ritchey and his

co-conspirators "to unlawfully enrich themselves." *Id*. at 28.

Count 4 incorporates Paragraphs Eighty through Ninety-six of the

Superseding Indictment [33] as the "methods, manner, and means" by which the

object and the purpose of the conspiracy were accomplished. *Id*. These allegations

set forth the same material misrepresentations the Court considered when it

addressed Ritchey's challenge to Count 3. *Id*. at 18-23. Generally, the Superseding

Indictment [33] asserts that GCPP, acting at Ritchey's direction, sold PPE and

other designated scare materials to VA facilities, employed high pressure sales

practices, omitted GCPP's costs and from where it obtained these materials, and

misled VA facilities by attempting to justify the highly inflated prices. *Id*.

Count 4 also incorporates Paragraphs Fifteen through Seventeen, which set

forth the purpose and function of the VA. *Id*. at 5. The VA is charged with

15

maintaining, operating, and administering "numerous" health care facilities in order to provide "health care to veterans of the armed services of the United States . . . at [a] reasonable cost to American taxpayers." *Id*. The Superseding Indictment states that the VA is responsible "for supporting national, state, and local emergency management, public health, safety, and homeland security efforts, including . . . providing PPE to state and local health care providers in need." *Id*.

Finally, Count 4 details the overt acts "Ritchey and his co-conspirators committed and caused to be committed," *id*. at 28-31, including the purchase of more than 100,000 N-95 masks from various retailers and the sale of these items to six different VA health care facilities, *id*.; *see also id*. at 20.

After thoroughly reviewing Count 4 and accepting the allegations as true, as the Court must on a motion to dismiss, it finds that Count 4 of the Superseding Indictment [33] is legally sufficient. Count 4 closely tracks the language of 18 U.S.C. § 371, *see Richard*, 775 F.3d at 292, and provides sufficient factual detail to avoid any misconception as to the elements of the offense charged, *see Rainey*, 757 F.3d at 247.

Ritchey also reurges the arguments previously addressed by the Court in considering the sufficiency of Count 3 and contends that for these same reasons "Count 4 fails to allege a conspiracy to do something illegal." Mot. [53] at 20. Specifically, Ritchey maintains that none of the conduct detailed in Count 4 "could have affected the VA's ability to acquire goods at a fair and reasonable price." *Id*. (internal quotation marks omitted). For the same reasons the Court stated with

16

respect to Count 3, it finds that the alleged misrepresentations in Count 4 create an inference of materiality and sufficiently allege a scheme to defraud. *See Bieganowski*, 313 F.3d at 285. In addition, and for the same reasons it stated previously, the Court rejects Ritchey's factual challenge to Count 4, that the FAR made the alleged misrepresentations immaterial. *See Fontenot*, 665 F.3d 644 (explaining that the resolution of factual disputes cannot be the grounds on which a motion to dismiss is decided).

Ritchey also maintains that "there is no allegation that the function of any of the VA facilities identified was impaired in any way." Mot. [53] at 20-21. However, this argument is at odds with the plain language of the Superseding Indictment [33], which states that the VA, among other responsibilities, "was responsible for providing the best service to veterans at [a] reasonable cost to American taxpayers." Sup. Ind. [33] at 5. Count 4 claims that Ritchey interfered with this VA function by selling PPE and other designated scarce materials to VA health care facilities at highly inflated prices. *Id*. at 21-23, 27-31. These allegations sufficiently charge Ritchey and his co-conspirators with impairing and impeding the VA's function, and thus, sufficiently set forth a conspiracy to defraud the United States in violation of § 371.

In sum, Counts 3 and 4 of the Superseding Indictment [33] are sufficient to give Ritchey notice of the crimes with which he is charged, to allow him to prepare his defense, and to permit him to invoke the Double Jeopardy Clause in any subsequent proceeding. Ritchey's Motion [53] should be denied as to Counts 3 and 4.

B.    Counts 5 and 6

1.    Relevant legal standard

Ritchey also asks this Court to dismiss Counts 5 and 6 of the Superseding Indictment [33] under the void-for-vagueness doctrine. Mot. [53] at 21-23; Reply [68] at 6-7. Ritchey contends that the phrase "prevailing market price" as used in 50 U.S.C. §§ 4512 is unconstitutionally vague because the statute fails to define this phrase and allows for random and inequitable enforcement. Mot. [53] at 21-23.

Under the void-for-vagueness doctrine, a criminal law or statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008) (citations omitted). Because the First Amendment is not implicated here, this doctrine is applied "in light of the facts of the case at hand." *United States v. Edwards*, 182 F.3d 333, 335 (5th Cir. 1999) (noting that vagueness challenges are applied differently when First Amendment freedoms are involved). To satisfy this doctrine, "a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Howard*, 766 F.3d 414, 428 (5th Cir. 2014) (alterations in original) (quoting *Skilling v. United States,* 561 U.S. 358, 403 (2010)).

When presented with a vagueness challenge, the Supreme Court cautions courts to consider the "strong presumptive validity that attaches to an Act of

Congress." *Skilling*, 561 U.S. at 403 (quoting *United States v. Nat'l Dairy Prods. Corp.,* 372 U.S. 29, 32 (1963)). As such, "the threshold for declaring a law void for vagueness is high." *Johnson v. United States*, 576 U.S. 591, 629 (2015) (Alito, J., dissenting).

2.   <u>Analysis</u>

Count 5 charges Ritchey with conspiracy to hoard designated scarce materials in violation of 18 U.S.C. § 371, while Count 6 charges him with hoarding designated scarce materials in violation of 50 U.S.C. §§ 4512 and 4513. Sup. Ind. [33] at 32-35. For both Counts, Ritchey is alleged to have accumulated scare materials for the purpose of reselling them at prices exceeding the prevailing market price and, with respect to Count 6, actually selling these materials at such a price. *Id*.

As discussed previously, § 4512 of the DPA prohibits the accumulation of "materials which have been designated by the President as scarce materials or materials the supply of which would be threatened by such accumulation," wherein the purpose is to resell the materials "at prices in excess of prevailing market prices." 50 U.S.C. § 4512. Section 4512 authorizes the President to designate materials subject to this prohibition by publishing them in the Federal Register. *Id*. "Any person who willfully performs any act prohibited" by the DPA "shall, upon conviction, be fined not more than $10,000 or imprisoned for not more than one year, or both." 50 U.S.C. § 4513.

Relevant to this case, on March 23, 2020, the President delegated to the Secretary of Health and Human Services ("HHS") his authority under § 4512

> to prevent hoarding of health and medical resources necessary to respond to the spread of COVID-19 within the United States, including the authority . . . to designate any material as a scarce material, or as a material the supply of which would be threatened by persons accumulating the material either in excess of reasonable demands of business, personal, or home consumption, or for the purpose of resale at prices in excess of prevailing market prices.

85 Fed. Reg. 17,001. On March 30, 2020, HHS published a notice which designated certain materials as scarce or threatened, including "N-95 Filtering Facepiece Respirators," "Other Filtering Facepiece Respirators," and other PPE materials. 85 Fed. Reg. 17,592. It was only after this date that the § 4512 prohibition would apply to these materials. *See* 50 U.S.C. § 4512; *United States v. Topouzian*, No. 20 CR 271, 2021 WL 5882204, at *3 (N.D. Ill. Dec. 13, 2021).

Following the designation of these materials as scarce or threatened, defendants in other cases have challenged the phrase "prevailing market price" in § 4512 as being unconstitutionally vague. *See Topouzian*, 2021 WL 5882204; *United States v. Leal-Matos*, No. 21-150 (SCC), 2022 WL 476094 (D.P.R. Feb. 15, 2022). In both *Topouzian* and *Leal-Matos*, the district court rejected the defendants' vagueness challenges. *Topouzian*, 2021 WL 5882204 at *5-9; *Leal-Matos*, 2022 WL 476094 at *2. The Court finds the reasoning from these decisions persuasive.

In particular, the Court takes note of the *Topouzian* court's discussion of the "more than a century of unbroken usage" of the term prevailing market price "in every imaginable legal context." *Topouzian*, 2021 WL 5882204 at *5. In *Topouzian*,

20

the court explained that this phrase appears in over a thousand federal court cases, hundreds of state court cases, thousands of secondary sources, and, most importantly, fifteen federal statutes. *Id.* at *5-6 (citing cases and collecting federal statutes). The court found that

> [t]his conspicuous line of continuous judicial and professional usage spanning more than a century stands in stark contrast to the defense argument that the term, "prevailing market prices," in the Defense Production Act is void-for-vagueness, proving once again the wisdom of Justice Holmes' insight that "a page of history is worth a volume of logic."

*Id.* at *6 (quoting *New York Trust Co. v. Eisner*, 256 U.S. 345, 349 (1921)). The Court finds this reasoning persuasive and agrees that the prevalent usage of this term cuts against Ritchey's argument that it is unconstitutionally vague.

 In *Leal-Matos*, the court rejected the defendant's vagueness challenge based in part on its finding that the § 4512 was not vague as applied to him. *Leal-Matos*, 2022 WL 476094 at *2. The defendant was "accused . . . of hoarding over 5,000 facemasks and [forty-eight] containers of disinfecting wipes, which he allegedly sold online for at least four to five times the prevailing market price." *Id.* The court found that, when taken as true, this alleged conduct appeared "to fall within the core of conduct that the DPA prohibits." *Id.*

Just as in *Leal-Matos*, the Court is required to assess whether §§ 4512 and 4513 are vague "in the context of the specific facts of [this] case." *Daniels*, 247 F.3d at 600. The Superseding Indictment [33] alleges that between January 2020 and April 2020, GCPP, acting through Ritchey, purchased or ordered more than one million N-95 masks. Sup. Ind. [33] at 20. Before March 30, 2020, it was not illegal to

hoard these masks for the purpose of selling them at an excessive price. *See* 50 U.S.C. § 4512; 85 Fed. Reg. 17,592. Counts 5 and 6 charge that after this date, Ritchey and his co-conspirators purchased or ordered 355,000 N-95 masks for an average per mask price of $5.00. Sup. Ind. [33] at 33-34. These Counts also allege that GCPP, at Ritchey's direction, sold N-95 masks after March 30, 2020, on six different occasions to three different health care providers for an average price of $20.83 per mask. *Id.*  From these allegations, the Court concludes that Ritchey's conduct "falls within the core" of that barred by the DPA. *Leal-Matos*, 2022 WL 476094 at *2.

Ritchey contends that an ordinary person would be unable to understand the definition of prevailing market price because the Government has been inconsistent in how it defines the term. Mot. [53] at 22. He asserts, without citation, that the Superseding Indictment [33] references the prevailing market price in some instances as the price at which manufacturers, such as 3M Company ("3M"), sell these materials, while at other points referring to this term as the difference between the price Ritchey paid for the PPE and the price at which it was sold. *Id.*

The Superseding Indictment [33] alleges that the Centers for Disease Control and Prevention ("CDC") specifically recommended that health care providers wear N-95 masks while treating patients with COVID-19. Sup. Ind. [33] at 3, 18. Prior to the COVID-19 Pandemic "3M's suggested retail price for most N-95 masks was typically between $1.15 and $1.50 per mask." *Id.* at 7. Following the CDC's recommendation and after these materials were designated as scarce or threatened,

the price of N-95 masks increased, as is evidenced by the cost GCPP paid for them. Prior to March 30, 2020, GCPP purportedly purchased N-95 masks from home improvement retailers for just over a $1.00 per mask. *Id*. at 19. After March 30, 2020, when these materials were designated as scarce or threatened, Ritchey and his co-conspirators purchased these materials for an average of $5.00 per mask. *Id*. at 33-34.

Based on the foregoing, the Court concludes that an ordinary person could understand and could find that selling these materials for an average of $20.83 per mask would be in excess of the prevailing market price. The allegations provide that Ritchey and his co-conspirators were able to purchase N-95 masks for an average of $5.00 per mask after they were designated as scarce or threatened, *id*. at 33-34, and a person of ordinary intelligence could appreciate that selling these materials for over four times what Ritchey paid for them would be in excess of the prevailing market price, *see Leal-Matos*, 2022 WL 476094 at *2 (finding that the DPA was not vague as applied to the defendant who was alleged to have sold N-95 masks for "at least four to five times the prevailing market price."). As such, even if the prevailing market price is calculated based on the costs expended by Ritchey and GCPP to purchase these materials, the highest price listed in the Superseding Indictment [33], the DPA is not vague as applied to Ritchey because a reasonable jury could conclude that the purported sales were clearly in excess of the prevailing market price.

The scienter requirement in section 4513 further supports this conclusion because it "alleviate[s] vagueness concerns." *McFadden v. United States*, 576 U.S. 186, 197 (2015) (internal quotation marks omitted) (quoting *Gonzales v. Carhart,* 550 U.S. 124, 149 (2007)); *see also United States v. Barraza-Mena*, 647 F. App'x 319, 327 (5th Cir. 2016) (applying *Gonzales*). Section 4513 criminalizes a willful violation of the DPA, 50 U.S.C. § 4513, which at trial would mean that the Government must prove that Ritchey willfully accumulated scarce or threatened materials for the purpose of reselling them "at prices in excess of prevailing market prices," 50 U.S.C. § 4512. As such, the DPA's scienter requirement further mitigates Ritchey's concern regarding the definiteness with which prevailing market price is defined. *See, e.g., United States v. Conlan*, 786 F.3d 380, 386 (5th Cir. 2015) (finding the scienter requirement in 18 U.S.C. § 2261A alleviated the defendant's vagueness concerns). In addition, the scienter requirement undermines Ritchey's assertion that the DPA encourages arbitrary and discriminatory enforcement, Mot. [53] at 22-23, because it "narrow[s] the scope of the [DPA's] prohibition and limit[s] prosecutorial discretion," *Gonzales,* 550 U.S. at 150.

In sum, the Court concludes that, based on the usage of the term in numerous legal contexts, the application of the term to the factual allegations in the Superseding Indictment [33], and the scienter requirement contained in the DPA, the term prevailing market price as used in this case is not unconstitutionally vague. Ritchey's Motion [53] should be denied as to Counts 5 and 6.

### III. CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Kenneth Bryan Ritchey's Motion [53] to Dismiss Counts 3-6 of the Superseding Indictment [33] is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 24th day of May, 2022.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE