UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

V.                                                    CRIMINAL NO. 1:21-CR-6-HSO-RPM

KENNETH BRYAN RITCHEY,


**ORDER**

### I.   Introduction

Before the Court is a motion filed by defendant Kenneth Bryan Ritchey ("Ritchey") seeking a preliminary injunction enjoining the Government's "continued and ongoing review of seized electronic and hard copy documents, including privileged materials." Doc. [72]. *See also* Fed. R. Crim. P. 41(g). This motion is opposed. Doc. [81].

### II.   Relevant Background

On April 15, 2020, the Government applied for a warrant to search the premises of Gulf Coast Pharmaceutical Plus, LLC ("GCPP"). Doc. [76], Ex. 1. The search warrant was sought in connection with the alleged hoarding of scarce COVID-19-related materials. 50 U.S.C. §§ 4512, 4513. Concluding that probable cause existed, a magistrate judge issued a search warrant ("First Warrant") on April 17, 2020. *Id.*, Ex. 2. The First Warrant authorized the Government to search the GCPP premises for, and seize, various materials. *Id.*, Ex. 2, at 5. The First Warrant did not contain any notice, or general guidelines, reflecting the Government's intent to use a filter team. *Ibid.*

On April 17, 2020, federal agents executed the First Warrant, seizing electronic devices, and "imag[ing] them for later review." Doc. [81], at 1. During execution of the warrant, GCPP corporate counsel, Erich Nichols ("Nichols"), was apparently onsite. *Id.*, at 2; Doc. [85]. At this

time, the Government requested that Nichols furnish a list of all current and former attorneys employed by GCPP or Ritchey. Doc. [81], Ex. 1. Days later, Nichols complied. *Ibid.* Around this time, the Government unilaterally created a filter team to review the seized materials. Doc. [81], Ex. 2. The Government did not seek court preapproval. Months later, on February 23, 2021, Bennett Starnes ("Starnes"), a self-described member of the filter team, informed Ritchey's former defense counsel via letter that the filter team was sending electronic copies of all seized materials to him. Doc. [81], Ex. 2. By March 10, 2021, Ritchey received copies of the seized materials. *Id.*, Ex. 3. On that same date, the Government represents for the first time here, the filter team began reviewing the materials seized pursuant to the First Warrant. *Compare* Doc. [81], at 3, *with* Doc. [81], Ex. 2. On May 7, 2021, and without notice to Ritchey, the filter team released all documents it unilaterally determined to be non-privileged material ("non-PPM") to the prosecution team. Doc. [72], Ex. 3; [81], at 3.

In August 2021, the Government applied for another warrant ("Second Warrant") to search previously-seized hard drives and servers belonging to GCPP. Doc. [76], Ex. 4. Unlike the First Warrant, the Second Warrant's temporal scope dated back to August 31, 2014 and related to distinct allegations of conspiracy and healthcare fraud. *Ibid.* On August 18, 2021, the undersigned found that probable cause existed and issued the Second Warrant. *Id.*, Ex. 3. The Second Warrant contained a general outline for a filter team protocol. *Ibid.* It stated:

> With respect to law enforcement's review of the digital evidence described in Attachment A, law enforcement (i.e., the federal agents and prosecutors working on this investigation and, prosecution), along with other government officials and contractors whom law enforcement deems necessary to assist in the review of the digital evidence (collectively, the "Review Team") are hereby authorized to review, in the first instance, the digital evidence and the information and materials contained in them, as set forth in this Attachment B. If law enforcement determines that all, some, or a portion of the information or materials in the digital evidence contain or may contain information or material subject to a claim of attorney-client privilege or work-product protection (the "Potentially Privileged Materials"), the

2

Review Team is hereby ordered to: (1) immediately cease its review of the specific Potentially Privileged Materials at issue; (2) segregate the specific Potentially Privileged Materials at issue; and (3) take appropriate steps to safeguard the specific Potentially Privileged Materials at issue. Nothing in this addendum shall be construed to require law enforcement to cease or suspend the Review Team's review of the digital evidence upon discovery of the existence of Potentially Privileged Materials in the digital evidence.

[Doc. [76], Ex. 3.]

On December 2, 2021, current defense counsel sent a letter to the filter team raising the issue of attorney-client privilege; he also explained that Ritchey did not receive the Government's list of PPM. Doc. [72], Ex. 6. Fifteen days later, Starnes responded that the filter team already produced all non-PPM to the prosecution team seized pursuant to the First Warrant. *Id.*, Ex. 3. Along with this letter, Starnes sent counsel an "excel spreadsheet with the Bates numbers of documents from the first search warrant released to the prosecution team." *Ibid.* However, Starnes further indicated—and the Government now represents—that the filter team has not turned over any materials seized pursuant to the Second Warrant. *Id. See also* Doc. [81]. On January 14, 2022, Ritchey demanded that the filter team turnover its protocol. Doc. [72], Ex. 7. Finally, on March 16, 2022, Starnes responded that the filter team "used attorney-specific search terms and generic terms to identify material potentially subject to a claim of attorney client privilege, attorney work product, or other protection." *Id.*, Ex. 8. This motion followed. Doc. [72].

## III.   <u>Standard of Review</u>

The Court applies a preliminary injunction standard. *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means* ("*Optima*"), 11 F.4th 1235, 1248 (11th Cir. 2021) (preliminary injunction standard applies to post-indictment Rule 41(g) motion to modify filter team protocol); *In re Search Warrant Issued June 13, 2019* ("*Baltimore Law Firm*"), 942 F.3d 159, 170–71 (4th Cir. 2019) (preliminary injunction standard applies to post-indictment

Rule 41(g) motion to return documents).[1]  In the Fifth Circuit, "[t]o be entitled to a preliminary injunction, the applicant[] must show (1) a substantial likelihood that . . . [he] will prevail on the merits, (2) a substantial threat that . . . [he] will suffer irreparable injury if the injunction is not granted, (3) [his] substantial injury outweighs the threatened harm to the party whom . . . [he] seek[s] to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018) (quotation omitted). The burden of proof rests with the movant, *United States v. Oduu*, 564 F. App'x 127, 130 (5th Cir. 2014), who must satisfy all four prongs to be entitled to a preliminary injunction, *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

## IV.   <u>Analysis</u>

### A.  **Categorical Violation of the Separation of Powers**

First, the Court addresses Ritchey's argument that a government filter team has "no right to review" seized documents for privilege because that determination is a "judicial function . . . [that] should not be assigned to the executive branch." Doc. [72], at 7. To support this proposition, Ritchey relies exclusively on the *Baltimore Law Firm* case. *Ibid.* In that case, the Government seized documents pursuant to a search warrant. *Baltimore Law Firm*, 942 F.3d at 164. While the warrant's scope was limited to one lawyer's documents about one client, the Government seized all of the lawyer's email correspondence, including correspondence with or about other clients outside the scope of the warrant. *Id.* at 166–67. Furthermore, only 116 of 52,000 emails seized were sent to or received from the designated client or contained his last name. *Ibid.* The vast

---

[1] In passing, Ritchey was initially indicted on January 12, 2021 and later reindicted under a superseding indictment on September 21, 2021. Doc. [3]; [33]. However, the standard put forth in *Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593 (5th Cir. 2021) only applies in the "preindictment" context. *Richey v. Smith*, 515 F.2d 1239, 1242 (5th Cir. 1975) (defining the "pre-indictment" period to be the time "prior to the initiation of any civil or criminal proceedings flowing from the seizure of that property.").

majority was correspondence to or from other attorneys about other clients, including other ongoing criminal cases. *Ibid.* Finally, the magistrate judge approved a protocol that: (i) was obtained *ex parte*; (ii) before the magistrate judge knew what was seized; (iii) placed local federal prosecutors on the filter team; and (iv) enabled the filter team to immediately produce materials it deemed non-PPM to the prosecution team. *Id.* at 177–78. Vacating the filter team protocol, the Fourth Circuit reasoned that the final determination of attorney-client privilege is vested in the court and the magistrate judge's authorized protocol violated the separation of powers by assigning that judicial function to the filter team. *Id.* at 176.

*Baltimore Law Firm* is not binding in this jurisdiction; and, "to the extent [*Baltimore Law Firm*] suggests that the use of a filter team by a federal prosecuting office [categorically] violate[s] the constitutional separation of powers, this Court respectfully disagrees." *In re Search Warrants Executed on Apr. 28, 2021*, No. 21–MC–425 (JPO), 2021 WL 2188150, at *2 n.3 (S.D.N.Y. May 28, 2021). Indeed, if "taken to its logical conclusion," Ritchey's argument would require "a judicial officer to conduct the initial review of almost any communications seized pursuant to a warrant . . . because, in theory, any [] communications could contain privileged information[;]" this would place an "intolerable" burden on the Court. *Avenatti*, 559 F. Supp. 3d at 282 (citation omitted). Ultimately, to the extent that Ritchey believes that filter teams are categorically unconstitutional, the Court rejects this argument.[2]

### B.  Return of Documents

Insofar as Ritchey seeks the return of seized materials—as opposed to challenging the adequacy of the filter team protocol– the Court's analysis begins and ends at the first preliminary injunction prong. *See, e.g.*, *In re Search of Elec. Commc'ns in the Acct. of chakafattah gmail.com*

---

[2] Nevertheless, the parties do not dispute that a final determination of attorney-client privilege is a consideration reserved for the Court. Doc. [72]; [81], at 10.

*at Internet Serv. Provider Google, Inc.*, 802 F.3d 516 (3d Cir. 2015) (distinguishing between seeking return of documents and challenging adequacy of filter team protocol); *In re Search Warrants*, No. 1:21–CV–04968–SDG, 2021 WL 5917983, at *2 (N.D. Ga. Dec. 15, 2021).

Under the first prong, Ritchey needed to demonstrate "a substantial likelihood that [he] will prevail on the merits" of his motion—i.e. that specific materials are entitled to attorney-client privilege. *City of El Cenizo, Texas*, 890 F.3d at 176. However, the attorney-client privilege only "protects communications from the *client* to the attorney made in confidence for the purpose of obtaining legal advice." *Wells v. Rushing*, 755 F.2d 376, 379 n.2 (5th Cir. 1985) (emphasis added). When the client is a corporation, the attorney-client privilege belongs to the corporation. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985). Similarly, where an LLC is an attorney's client, the privilege belongs to the LLC—*not* its member or members. *See, e.g.*, *Pearlshire Cap. Grp., LLC v. Zaid*, 490 F. Supp. 3d 1299, 1308 (N.D. Ill. 2020). *See also Taylor Lohmeyer L. Firm P.L.L.C. v. United States*, 957 F.3d 505, 509 (5th Cir. 2020); *In re PWK Timberland, LLC*, 549 B.R. 366, 370 (Bankr. W.D. La. 2015). Here, Ritchey repeatedly asserts GCPP's privilege in his motion. Doc. [72], at 5–6, Ex. 6. While an apparent member of GCPP— an LLC, Ritchey lacks standing to assert a privilege belonging to GCPP. *Pearlshire Cap. Grp., LLC*, 490 F. Supp. 3d at 1308.[3]

Notwithstanding the above, Ritchey also asserts his *personal* privilege over some of the seized materials. Doc. [72], at 4. On this point, "the attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents[,]" *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982), but rather it "'must be specifically asserted with respect to particular documents[,]'" *Taylor Lohmeyer L. Firm P.L.L.C.*, 957 F.3d at 509–10 (quoting *El Paso Co.*, 682

---

[3] The Court may raise the question of Ritchey's standing to assert attorney-client privilege *sua sponte*. *APFA Inc. v. UATP Mgmt., LLC*, 537 F. Supp. 3d 897, 904 (N.D. Tex. 2021).

F.2d at 538). After all, "[d]etermining the applicability of the privilege is a highly fact-specific inquiry, and the party asserting the privilege bears the burden of proof." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (citation omitted). Here, Ritchey has not identified any specific materials that he believes are privileged. By extent, he has not specified *why* any seized materials are privileged. He also failed to explain why *he* is the privilege-holder of specific materials, not GCPP. *In re Grand Jury Subpoena*, 274 F.3d 563, 571 (1st Cir. 2001). For these reasons, Ritchey's motion, to the extent he has standing, fails for lack of specificity. *Oduu*, 564 F. App'x at 130.

### C. Adequacy of Filter Team Protocol

### i.    Introduction

While the parties agree that a filter team was necessary in this case, they disagree whether the existing filter team protocol adequately protects Ritchey's attorney-client privilege. Before jumping into the analysis, the Court clarifies two points. First, the Government represents, and Ritchey does not dispute, that the same filter team protocol governed review of the materials seized under each Warrant. *See* Doc. [72], at 12–13; [81], at 11–12. Relatedly, the existing filter team protocol is located in the Second Warrant and Starnes' March 16, 2022 email to defense counsel. Doc. [72], Ex. 3, 8. The parties have not identified any other aspects of the protocol. Doc. [72]; [81]. Second, unlike the Second Warrant, materials seized under the First Warrant, which the filter team already determined were non-PPM, have already been produced to the prosecution team. Doc. [72], Ex. 3; [81], at 5. While the Court recognizes that this distinction may carry significance for suppression purposes, the merits-related question presently before the Court is whether the

filter team protocol, used to filter materials seized under *both* Warrants, was adequate.[4] If it was inadequate and the other preliminary injunction prongs favor Ritchey, the Court must fashion an appropriate remedy to the inadequate filter team protocol with respect to *all* seized materials. *Baltimore Law Firm*, 942 F.3d at 176. Now, the Court turns to the preliminary injunction analysis.

### a.  Substantial Likelihood of Success

At the first prong, the Court considers whether Ritchey has demonstrated a substantial likelihood that he will succeed on the merits. *City of El Cenizo, Texas*, 890 F.3d at 176. In this context, the Court asks whether it is substantially likely that the Government's filter team protocol provides inadequate protection for Ritchey's attorney-client privilege. *Optima*, 11 F.4th at 1249; *Baltimore Law Firm*, 942 F.3d at 175–76. The Court begins with the relevant principles and competing concerns that animate its consideration.

The attorney-client privilege is the oldest privilege known to the common law. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege "play[s] a vital 'role in assuring the proper functioning of the criminal justice system' and provide[s] a means for a lawyer to prepare h[is] client's case." *Optima*, 11 F.4th at 1249 (quotation omitted). "[It] encourage[s] full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice." *Upjohn Co.*, 449 U.S. at 389. In short, courts "zealously protect" documents within the scope of the attorney-client privilege. *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 960 (3d Cir. 1984) (citations omitted).

Notwithstanding the above, the proliferation of electronically-stored information ("ESI") has led to a corresponding manifold increase in the volume of materials seized pursuant to search

---

[4] The issue of suppression or attorney disqualification is legally distinct from the Court's instant review and appropriate to assert before the district judge. *Compare Optima*, 11 F.4th at 1249, *with United States v. Diaz*, 941 F.3d 729, 739 (5th Cir. 2019).

warrants. *See*, *e.g.*, Larry J. Wszalek, *Smart Collection When Using A Search Warrant to Seize Voluminous Electronic Evidence: Have A Strategy and A Plan*, 68 DOJ J. Fed. L. & Prac. 97, 97, 100–1 (2020). Seized materials that are subject to the attorney-client privilege may be among, or even number, in the hundreds of thousands or millions. *See*, *e.g.*, *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc) (per curiam). Considering the volume of ESI, courts have roundly rejected the general proposition that the court must engage in a page-by-page review of seized ESI for privilege. *Compare Avenatti*, 559 F. Supp. 3d at 282 (finding filter team's review of materials seized from civil lawyer's law office appropriate), *with United States v. Stewart*, No. 02–CR–395 (JGK), 2002 WL 1300059, at *7, *10 (S.D.N.Y. June 11, 2002) (appointing a special master to review materials seized from a criminal defense lawyer's office).  They have done so for good reason: "[i]f the court is required to directly screen collected evidence for attorney-client privilege[] . . . , any search warrant issued for a location (corporate office) or device (smartphone) that could plausibly contain some attorney-client documents would also now require the court to first sift through the information recovered before investigators could review it." *United States v. Schwartz*, No. 19–20451, 2021 WL 3909807, at *7 (E.D. Mich. Sept. 1, 2021). This practice would place an "intolerable" burden on the Court, *Avenatti*, 559 F. Supp. 3d at 282, and is "simply not how search warrants are actually executed today[,]" *Schwartz*, 2021 WL 3909807, at *7.

The emergent answer to balancing these concerns is usage of a government filter team. A "filter team" generally consists "of FBI agents, an Assistant United States Attorney and other employees who are not involved in the investigation . . . , and whose task is to identify potentially privileged documents and then segregate these documents from non-privileged material." *Heebe v. United States*, No. CIV.A. 10–3452, 2012 WL 3065445, at *3 (E.D. La. July 27, 2012). "The use of a

filter team is a common procedure in this . . . [Circuit] and has been deemed adequate in numerous cases to protect attorney-client communications." *In re Search Warrants Executed on Apr. 28, 2021*, No. 21–MC–425 (JPO), 2021 WL 2188150, at *2 (S.D.N.Y. May 28, 2021) (citations omitted). *See also United States v. Satary*, 504 F. Supp. 3d 544, 555 (E.D. La. 2020). On some level, however, filter teams always "present inevitable, and reasonably foreseeable, risks to privilege, for they have been implicated in the past in leaks of confidential information to prosecutors." *In re Grand Jury Subpoenas* ("*Winget*"), 454 F.3d 511, 523 (6th Cir. 2006) (citing *United States v. Noriega*, 764 F. Supp. 1480 (S.D. Fla. 1991)). That is, a filter team is "the government's fox . . . left in charge of the [privilege-holder's] henhouse, and may err by neglect or malice, as well as by honest differences of opinion." *Ibid.*

In sum, filter teams present a solution to a practical problem in cases where there is a high likelihood that a significant volume of privileged materials will be seized. *Avenatti*, 559 F. Supp. 3d at 282; *Schwartz*, 2021 WL 3909807, at *7; *Heebe*, 2012 WL 3065445, at *3; *Hicks v. Bush*, 452 F.Supp.2d 88, 103 n.12 (D.D.C. 2006). Still, courts necessarily view filter teams with a certain level of suspicion. *Winget*, 454 F.3d at 523; *United States v. Renzi*, 722 F. Supp. 2d 1100, 1112 (D. Ariz. 2010). To dispel this suspicion, the Government typically seeks court preapproval of its filter team protocol in an adversarial context or an informal, good faith resolution with the defendant. *Satary*, 504 F. Supp. 3d at 555; *United States v. Sledziejowski*, No. 3:16–CR–101–B, 2018 WL 2288962, at *1 (N.D. Tex. May 18, 2018); *Heebe*, 2012 WL 3065445, at *3. Absent specific facts evidencing mishandling or other misconduct, courts have widely approved of filter team protocols formed through this process. *Warrants Executed on Apr. 28, 2021*, 2021 WL 2188150, at *2. Indeed, in such cases, the protocol is transparent, subject to adversarial review, and flexible to the needs of the case.

However, the Court views the present case in a very different light. To date, the Government has neither sought court preapproval of its filter team protocol in an adversarial setting nor engaged in good faith informal negotiations with Ritchey about the creation of a protocol. Doc. [81], Ex. 2. To the contrary, the Government unilaterally created a protocol and did not take steps to *fully* apprise Ritchey about this protocol. *Ibid.* In fact, the filter team did not reveal any portion of its protocol until more than a year after executing the First Warrant. Even then, the filter team only revealed a portion of that protocol in August 2021. Doc. [72], Ex. 3, 7–8. Under these circumstances, the Court questions the adequacy of the filter team protocol.

The parties first dispute whether the Government needs to include a filter team protocol in a search warrant. Doc. [72], at 9; [81], at 7. On this point, neither Ritchey, nor this Court, nor other courts have discovered authority supporting the proposition that a proposed filter team protocol must be included within a search warrant. *See*, *e.g.*, *United States v. St. George*, No. CR 19–10059–RGS, 2021 WL 4132662, at *3 n.5 (D. Mass. Sept. 11, 2021). Second, and more importantly, the Government is not constitutionally required to implement a filter team. After all, the attorney-client privilege is not a constitutional right but rather an evidentiary privilege. *Diaz*, 941 F.3d at 739. Nevertheless, while the Government is not obligated to implement a filter team, the absence of an adequate protocol—or filter team altogether—may transgress constitutional boundaries, *United States v. Neill*, 952 F. Supp. 834, 839–40  (D.D.C. 1997), create the appearance of impropriety, *Baltimore Law Firm*, 942 F.3d at 182, or require the Court to impose a modified filter team protocol, *In re Sealed Search Warrant & Application for a Warrant*, No. 20–MJ–03278, 2020 WL 5658721, at *4–*8 (S.D. Fla. Sept. 23, 2020).

Next, the parties hotly contest whether the Government must provide an objections period to potential privilege holders before production of non-PPM to the prosecution team. Doc. [72], at

11–12; [81], at 8.[5] As a general matter, if a filter team determines that a seized document is non-PPM, this is a *preliminary* privilege finding. However, the filter team's act of producing documents to the prosecution team carries legal significance. *See*, *e.g.*, *United States v. Vepuri*, No. 21–MJ–1220, 2021 WL 4860744, at *2 (E.D. Pa. Oct. 19, 2021). Namely, in the eyes of the Court, once materials are produced to the prosecution team, a final privilege determination has been made. *Baltimore Law Firm*, 942 F.3d at 176–77; *Heebe*, 2012 WL 3065445, at *4.[6]

In this case, the Government's filter team protocol plainly does not provide Ritchey with an objections period. Doc. [76], Ex. 3, 8. Likewise, there is no indication that the parties informally agreed to the present protocol. Cf. *Sledziejowski*, 2018 WL 2288962, at *3. In turn, the current protocol vested the final privilege determination in the filter team. Cf. *Vepuri*, 2021 WL 4860744, at *3; *United States v. Sullivan*, No. CR 17–00104–JMS–KJM, 2020 WL 1815220 (D. Haw. Apr. 9, 2020). This undermines the adequacy of the current filter team protocol.

---

[5] Citing several cases, the Government claims that courts in this Circuit do not require a non-PPM objections period. With the exception of *Satary*, however, the Government cites cases in which the defendant agreed to or expressly declined to oppose a Government motion for court *pre*approval of a particular filter team protocol. *See*, *e.g.*, *Sledziejowski*, 2018 WL 2288962, at *1. These cases are readily distinguishable because a privilege holder may voluntarily agree to a given filter team protocol that provides varying degrees of privilege protection. *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993); Fed. R. Evid. 502. However, the Government's logic is also fatally flawed. Under its logic, a series of agreed orders waiving the privilege altogether would be considered an emerging practice in this Circuit. The Court is not convinced. Turning to *Satary*, the magistrate judge actually concluded that our courts generally require a non-PPM preproduction objections period. *Satary*, 504 F. Supp. 3d at 554–55. However, she declined to impose this protocol requirement in that case because the defendant Satary, *only* asserted the privilege on behalf of corporations and, therefore, lacked standing to oppose the Government's motion. *Ibid.* Unlike in *Satary*, Ritchey is asserting his personal privilege so he has standing to dispute the Government's filter team protocol. *Pearlshire Cap. Grp., LLC*, 490 F. Supp. 3d at 1308.

The Government also claims that a non-PPM preproduction objections period is only used in the law firm context. Doc. [81], at 10. This argument is meritless. To begin with, the Government merely cherry picks three cases involving law firms. *Ibid.* Our courts have required such an objections period outside the law firm context on several occasions. *See*, *e.g.*, *In re Ingram*, 915 F. Supp. 2d 761 (E.D. La. 2012); *In re Search of 5444 Westheimer Rd. Suite 1570, Houston, Texas, on May 4, 2006*, No. H–06–238, 2006 WL 1881370 (S.D. Tex. July 6, 2006). Further, the Court fails to see why a law firm engaged solely in civil practice, but not another business entity, should only be entitled to a non-PPM preproduction objections period. After all, the *bona fide* purpose of a filter team is to efficiently cull out privileged documents without violating the attorney-client privilege. *Avenatti*, 559 F. Supp. 3d at 282. From this perspective, a civil law firm's privilege concerns appear no more important than another business entity's concerns.

[6] Of course, a defendant is free to agree to such a protocol. *Kennedy*, No. 4:19–CR–00842, at *1

The Government's filter team protocol has other flaws. First, the filter team's execution of the filter team protocol created the appearance of non-neutrality and, by extent, reflects the inadequacy of that protocol. *In re Search Warrant for L. Offs. Executed on Mar. 19, 1992*, 153 F.R.D. 55, 58–59 (S.D.N.Y. 1994). On this point, the First Warrant did not mention a potential filter team protocol. Doc. [76], Ex. 2. After executing the First Warrant on April 17, 2020, the Government did not seek court preapproval or an informal agreement with the defendant. Instead, Starnes only contacted former defense counsel on February 23, 2021. Doc. [76], Ex. 3. While his letter made passing reference to the existence of a filter team for the first time, Starnes did not identify a filter team protocol or ask for Ritchey's input about such a protocol. Doc. [81], Ex. 2. To be sure, Starnes did provide Ritchey with electronic copies of roughly six million documents seized—even those falling outside the scope of the First Warrant. *Ibid.* Unfortunately, Ritchey was only able to access the seized materials on March 10, 2021; and, the filter team produced all materials that it unilaterally deemed non-PPM to the prosecution team on May 7, 2021. Doc. [72], Ex. 3; [81], at 3, Ex. 3. Ritchey was not warned about the filter team's non-PPM determination or the timing of disclosure to the prosecution team. In fact, there is no indication that Ritchey was aware of a tentative filter team protocol until August 2021. Doc. [76], Ex. 3. And, he was not *fully* aware of the filter team protocol until March 2022. Doc. [72], Ex. 8. In light of the above, the filter team's conduct created the appearance that it favored the Government, and, therefore, that it was not acting neutrally. *Baltimore Law Firm*, 942 F.3d at 176–77

Finally, the protocol's own provisions further reflect its inadequacy. For one, the protocol set forth in the Second Warrant did not fully describe the filter team protocol so Ritchey was not fully informed until March of 2022. *Compare* Doc. [72], Ex. 3, *with id.*, Ex. 6, 8. Second, the filter team protocol failed to create an objections process. *Id.*, Ex. 3. Third, as identified above, the filter team

protocol enabled the filter team to unilaterally make a final privilege determination about non-PPM. Doc. [76], Ex. 3.

For *all* of these reasons, there is a substantial likelihood that Ritchey will successfully demonstrate that the existing filter team protocol inadequately protects his attorney-client privilege.

### b. Threat of Irreparable Harm

Next, the Court asks whether there is a "substantial threat that [Ritchey] will suffer irreparable injury if the injunction is not granted[.]" *City of El Cenizo, Texas*, 890 F.3d at 176 (quotation omitted). To meet this prong, Ritchey "must show that 'irreparable injury is likely in the absence of an injunction.'" *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 583 (E.D. La. 2016) (quotation omitted). "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (citation omitted). Relevant here, it is well-established that "an adverse party's review of privileged materials seriously injures the privilege holder." *Baltimore Law Firm*, 942 F.3d at 175 (collecting cases). *See also Harbor Healthcare Sys., L.P.*, 5 F.4th at 593; *United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003); *Klitzman, Klitzman & Gallagher*, 744 F.2d at 960. When a filter team protocol inadequately protects the attorney-client privilege, there is a significant likelihood that the opposing party, the prosecution team, will review privileged materials and cause irreparable harm. *Baltimore Law Firm*, 942 F.3d at 175.

An aggrieved party cannot receive monetary damages under Rule 41(g). *Pena v. United States*, 157 F.3d 984, 986 (5th Cir. 1998). Furthermore, it is highly likely that the prosecuting team will continue to possess some of Ritchey's personally privileged materials and/or these materials are

about to be handed over to the prosecution team absent court intervention. Doc. [81].[7] *See also Sierra Club v. United States Army Corps of Engineers*, 482 F. Supp. 3d 543, 555 (W.D. Tex. 2020) (noting that eight-month delay before filing preliminary injunction motion was not dispositive at this prong). Finally, Ritchey has demonstrated a substantial likelihood that the current filter team protocol is inadequate. For these reasons, there is a substantial threat that the protocol will cause irreparable harm to Ritchey. *Baltimore Law Firm*, 942 F.3d at 175.

### c. Balancing the Equities

Third, the Court considers whether Ritchey's injury "outweighs the threatened harm to the party whom [he] seek[s] to enjoin[.]" *City of El Cenizo, Texas*, 890 F.3d at 176. "In weighing equities, a court 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Texas v. United States*, 524 F. Supp. 3d 598, 663 (S.D. Tex. 2021) (quotation omitted). *See also Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997).

Here, the equities weigh heavily in Ritchey's favor. First, the filter team did not give the appearance of a neutral nonparty. *See, e.g.*, Doc. [81], Ex. 2–3. Furthermore, Ritchey was not fully informed about the filter team protocol until March 16, 2022. Doc. [72], Ex. 8. Finally, the Government did not provide Ritchey with an opportunity to object before it produced certain materials that it unilaterally deemed non-PPM to the prosecution team. Doc. [76], Ex. 3. For these and other reasons identified above, there is a substantial risk of harm to Ritchey's attorney-client privilege. On the other hand, the Government may be slightly delayed in bringing Ritchey to trial, inconvenienced if the Court temporarily halts it from moving forward with aspects of its case, and

---

[7] First, Ritchey represents that he is the privilege holder of some seized materials; the Government does not dispute this fact. Doc. [72], at 1. Furthermore, the Government requested that Nichols provide a list of, *inter alia*, Ritchey's personal current and former attorneys. Doc. [81], Ex. 1. Finally, Ritchey is apparently the sole member of GCPP and GCPP corporate counsel has communicated with the Government on Ritchey's behalf at times. *Ibid.*

incur some additional costs in properly filtering the seized materials. However, if the Government believes that it will be prejudiced, it has the option to seek a continuance. Furthermore, the Government has not identified any concrete reason why a delay or continuance would be more than an inconvenience. There is a comparatively small risk of harm to the Government.

### d. Public Interest

Finally, the Court asks whether granting the preliminary injunction will disservice the public interest. *City of El Cenizo, Texas*, 890 F.3d at 176. Under this prong, the Court considers "what public interests might be injured and what public interests might be served by granting or denying a preliminary injunction." *Texas*, 524 F. Supp. 3d at 663 (citing *Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 997–98 (8th Cir. 2011)).

It is well-established that protection of the attorney-client privilege typically supports the public interest. *See*, *e.g.*, *Philip Morris Inc.*, 314 F.3d at 622 (quotation omitted) (noting that the attorney-client privilege is an "'institutionally significant status or relationship' with deep roots in our nation's adversary system"). As described above, the existing filter team protocol will only undermine Ritchey's privilege. Superseding this filter team protocol with one that adequately protects Ritchey's privilege will serve the public interest. This prong weighs in Ritchey's favor.

For these reasons, Ritchey will be granted a preliminary injunction.

### V.    Conclusion

**IT IS THEREFORE ORDERED AND ADJUDGED** that Ritchey's [72] Motion to Return Documents/Adequate Filter Team Protocol is **GRANTED IN PART** and **DENIED IN PART**. Ritchey's motion is **DENIED** insofar he seeks a return of documents. However, Ritchey's motion is **GRANTED** insofar he seeks to vacate the existing filter team protocol.

**IT IS FURTHER ORDERED,** that the prosecuting team is enjoined to return all original materials seized under *either* Warrant to the filter team. The prosecution team is further enjoined to destroy any and all copies of these materials in their possession.

**IT IS FURTHER ORDERED,** the Court enjoins the filter team from taking any additional action with the seized materials until this Court approves of a new filter team protocol.

**IT IS FURTHER ORDERED,** the parties are directed to submit a joint modified filter team protocol to the Court within 14 days of entry of this Order. If the parties cannot agree on a modified protocol, which must account for the Court's concerns, then they shall contact the Court. Once finalized, the modified protocol shall be used to refilter all materials seized under the First Warrant and Second Warrant.

**SO ORDERED AND ADJUDGED**, this the 3rd day of June 2022.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE