**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **v.** | § | **No. 1:21-cr-6-HSO-RPM-1** |
| | § | |
| | § | |
| **KENNETH BRYAN RITCHEY** | § | |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT**
**KENNETH BRYAN RITCHEY'S MOTION [93] TO SUPPRESS**

BEFORE THE COURT is Defendant Kenneth Bryan Ritchey's Motion [93] to

Suppress. This Motion is fully briefed. After due consideration of the Motion [93],

the parties' submissions, the record, and relevant legal authority, the Court finds

that the Motion [93] should be denied.

## I.  BACKGROUND

On January 12, 2021, a Grand Jury returned a four-count Indictment [3]

against Defendant Kenneth Bryan Ritchey ("Defendant" or "Ritchey") charging him

with conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. § 1349

(Count 1); conspiracy to defraud the United States in violation of 18 U.S.C. § 371

(Count 2); conspiracy to hoard designated scarce materials in violation of 18 U.S.C.

§ 371 (Count 3); and hoarding designated scarce materials in violation of 50 U.S.C.

§§ 4512 and 4513 (Count 4). Ind. [3] at 15-24. These charges related to Ritchey's

alleged participation in a scheme to defraud the United States and other health

care providers through the acquisition and resale of personal protective equipment

("PPE") and other designated materials at excessive prices (the "PPE scheme"). *Id.* at 9-15. The Indictment [3] alleged that Ritchey was the operator of Gulf Coast Pharmaceuticals Plus, LLC ("GCPP"), "a wholesale pharmaceutical distributor," and that his co-conspirators worked for GCPP. *Id.* at 11.

The Government continued its investigation of Ritchey, which included conducting interviews with his alleged co-conspirators. On January 27, 2021, Government agents interviewed a former GCPP sales representative, subsequently identified in the Superseding Indictment [33] as Co-Conspirator 12. Ex. 1 [49-1] at 1. During this interview, Co-Conspirator 12 revealed information relating to an invoice backdating scheme at GCPP. *Id.* at 5-9. Specifically, Co-Conspirator 12 described a scheme in which GCPP, through Ritchey and other employees, allegedly backdated invoices for use in audits of pharmacies it sold products to in order to conceal that these pharmacies did not dispense, or carry in stock, the medications for which the pharmacies had billed insurance companies (the "invoice backdating scheme"). *Id.*

On March 2, 2021, Government agents conducted an interview with GCPP's head buyer, later identified in the Superseding Indictment [34] as Co-Conspirator 3. Ex. 2 [93-2] at 1. Although he initially denied any knowledge of this scheme, Co-Conspirator 3 admitted to playing a role in the invoice backdating scheme. *Id.* at 8; *see also* Ex. 3 [49-3] at 8. On May 11, 2021, Co-Conspirator 3 again met with a Government agent and agreed to record conversations between himself and Ritchey. Ex. 4 [93-4] at 1. Co-Conspirator 3 was provided a recording device "in order for him

to make recorded phone calls at the direction of agents." *Id*. The Government asserts that it instructed Co-Conspirator 3 "not to elicit any privileged information" from Ritchey, but it has not submitted any evidence to support this assertion. Resp. [98] at 3; *see also* Ex. 4 [93-4] at 1. Two days later, the Government met with Ritchey's attorneys and informed them that the Government was investigating Ritchey's involvement in the invoice backdating scheme. Mot. [93] at 9; Resp. [98] at 3.

On August 3, 2021, Co-Conspirator 3 once again met with Government agents and divulged that he had recorded every conversation, consisting of approximately 100 recordings, between himself and Ritchey since receiving the recording device. Ex. 3 [93-3] at 2. The Government collected the recordings and turned them over to its filter team for "review and further analysis." *Id*. at 10. The Government states that these recordings were released to the prosecution team after its filter team determined that "no privileged information or information relating to the PPE [s]cheme was captured on the recordings." Resp. [98] at 4.

On September 21, 2021, the Grand Jury returned a Superseding Indictment [33] in this case, charging Ritchey in six counts: (1) conspiracy to commit health care fraud and wire fraud in violation 18 U.S.C. § 1349 (Count 1); (2) false statements relating to health care matters in violation of 18 U.S.C. §§ 1035 and 2 (Count 2); (3) conspiracy to commit wire fraud and mail fraud in violation of 18 U.S.C. 1349 (Count 3); (4) conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (Count 4); (5) conspiracy to hoard designated scarce materials in

violation of 18 U.S.C. § 371 (Count 5); and (6) hoarding designated scarce materials in violation of 50 U.S.C. §§ 4512 and 4513 (Count 6). Sup. Ind. [33] at 23-35. Counts 1 and 2 relate to Ritchey's alleged involvement in the invoice backdating scheme, whereas Counts 3 through 6 arise from Ritchey's purported participation in the PPE scheme. *Id*.

Ritchey has filed the present Motion [93] to Suppress, seeking to suppress all of the recordings made by Co-Conspirator 3 as obtained in violation of his Sixth Amendment right to counsel. Mot. [93] at 1, 15. Ritchey contends that his Sixth Amendment right to counsel attached prior to Co-Conspirator 3 recording their conversations, that Co-Conspirator 3 was acting as a Government agent, and that Co-Conspirator 3 deliberately elicited incriminating statements from him. *Id*. at 5-11. Ritchey asserts that the Government violated 28 U.S.C. § 530B and Mississippi Rule of Professional Conduct 4.2 by directing Co-Conspirator 3 to record his conversations with Ritchey when it knew he was represented by counsel. *Id*. at 13-14. Finally, Ritchey requests a hearing to ensure that all recordings and any other evidence obtained as a result of the recordings is suppressed. *Id*. at 15.

The Government responds that Ritchey's Sixth Amendment rights were not violated because his right to counsel had not attached for the charges arising from the invoice backdating scheme. Resp. [98] at 6-7. Specifically, it contends that the Superseding Indictment [33] charges two separate schemes and that the charges in each scheme do not constitute the same offense under the test announced in *Blockburger v. United States*, 284 U.S. 299 (1932). *Id*. at 8-10. The Government also

argues that Co-Conspirator 3's conduct did not violate any ethical or professional rules because it was "authorized by law." *Id*. at 10-14.

## II.   DISCUSSION

A.    Sixth Amendment right to counsel

1.    Relevant legal standard

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). In *McNeil*, the Supreme Court explained that the Sixth Amendment right to counsel is "offense specific," meaning that "it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id*. at 175 (citations and internal quotation marks omitted). Although the Sixth Amendment right to counsel is offense specific, the "definition of an 'offense' is not necessarily limited to the four corners of a charging instrument." *Texas v. Cobb*, 532 U.S. 162, 172-73 (2001). Instead, the Supreme Court in *Cobb* held that the Sixth Amendment right to counsel extends to "offenses that, even if not formally charged, would be considered the same offense under the *Blockburger* test." *Id*. at 173; *see also id*. ("We see no constitutional difference between the meaning of the term 'offense' in the contexts of double jeopardy and of the right to counsel.").[1]

---

[1] The Fifth Circuit applies its double jeopardy principles "in determining whether two offenses are the same in the Sixth Amendment context." *United States v. Avants*, 278 F.3d 510, 517 (5th Cir. 2002).

Under the *Blockburger* test, "where the same act or transaction constitutes a violation of two distinct statutory provisions" the court determines "whether there are two offenses or only one" by considering "whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304. Stated differently, "if each crime requires an element of proof not required by the other crimes charged," meaning that they are "factually distinct," then the crimes are not the same offense. *United States v. Delgado*, 256 F.3d 264, 272 (5th Cir. 2001).

When applying *Blockburger* to conspiracy cases, "the central issue . . . is whether there was one agreement and one conspiracy or more than one agreement and more than one conspiracy." *United States v. El-Mezain*, 664 F.3d 467, 546 (5th Cir. 2011) (citation omitted). The United States Court of Appeals for the Fifth Circuit has identified five factors to assist courts in evaluating whether there was more than one agreement:

> (1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the [G]overnment or any other description of the offense charged that indicates the nature and scope the activity that the [G]overnment sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place.

*Delgado*, 256 F.3d at 272; *United States v. Njoku*, 737 F.3d 55, 69 (5th Cir. 2013) (applying these factors to a double jeopardy claim based on a previous conviction under 18 U.S.C. § 1349). In this analysis, no one factor is determinative. *Njoku*, 737 F.3d at 69.

2.     <u>The parties' arguments</u>

Ritchey argues that Co-Conspirator 3, acting at the direction of the Government, elicited allegedly incriminating statements from him in violation of his Sixth Amendment right to counsel. Mot. [93] at 5-6. Although he had only been indicted and arraigned on the charges for the PPE scheme in the original Indictment [3] at the time, Ritchey asserts that that his Sixth Amendment right to counsel had attached for the charges arising out of the invoice backdating scheme detailed in the Superseding Indictment [33] before Co-Conspirator 3 began recording him. *Id.* As such, he seeks suppression of all recordings obtained by Co-Conspirator 3. *Id.* at 1.

Ritchey contends that under *Blockburger*, "the schemes . . . charged by the [G]rand [J]ury are not distinct" and charge the same offense. *Id.* at 7-8. Specifically, he notes that the time period for the schemes partially overlapped and that some of the same co-conspirators are alleged to have been involved in both schemes. *Id.* at 8. From these facts, Ritchey maintains that the Grand Jury described "one overarching conspiracy" rather than two separate ones. *Id.* at 7; Reply [99] at 8.

The Government takes the position that the PPE and invoice backdating schemes are distinct. Resp. [98] at 8. In applying the *Blockburger* test, the Government contends that none of the charges are the same offense because they "do not have the same elements or factual underpinnings." *Id.* As such, the Government maintains that Ritchey's Sixth Amendment right to counsel did not

attach for the charges arising out of the invoice backdating scheme until the Grand Jury returned the Superseding Indictment [33]. *Id.* at 10.

3.   <u>Analysis</u>

It is undisputed that Ritchey had not been formally charged with the offenses arising out of the invoice backdating scheme during the time period in question. Ind. [3] (returned on January 12, 2021); Sup. Ind. [33] (returned on September, 21, 2021); Ex. 3 [93-4] (Co-Conspirator 3 received recording equipment on May 11, 2021); Mot. [93] at 3-4 (Ritchey recognizing that the Superseding Indictment [33] brought new charges relating to the invoice backdating scheme). As such, Ritchey's Sixth Amendment right to counsel would only prevent the admission of incriminating statements relating to this second scheme if the charges flowing from it are considered the "same offense" as those for which he was charged in the original Indictment [3]. *Cobb*, 532 U.S. at 173; *see also United States v. Portillo*, 969 F.3d 144, 160 (5th Cir. 2020) (recognizing that the Sixth Amendment right to counsel does not attach until "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.") (quotation omitted)).

Ritchey was charged in the Indictment [3] and the Superseding Indictment [33] in connection with the PPE scheme with conspiring to commit mail and wire fraud in violation of 18 U.S.C. § 1349 (Count 3); conspiring to defraud the United States in violation of 18 U.S.C. § 371 (Count 4); conspiring to hoard designated scarce materials in violation of 18 U.S.C. § 371 (Count 5); and hoarding designated

8

scarce materials in violation of 50 U.S.C. §§ 4512 and 4513 (Count 6). Sup. Ind. [33] at 23-35; *see also* Ind. [3] at 15-24. In connection with the invoice backdating scheme, Ritchey was charged in the Superseding Indictment [33] in two additional counts, with conspiring to commit health care and wire fraud in violation of 18 U.S.C. § 1349 (Count 1), and making false statements relating to health care matters in violation of 18 U.S.C. §§ 1035 and 2 (Count 2). Ritchey contends that Counts 1 and 3 charge the same offense because both allege a violation of 18 U.S.C. § 1349. Reply [99] at 7.[2] To determine whether the crimes charged in Counts 1 and 3 constitute the same offense the Court employs the *Blockburger* test and the factors articulated by the Fifth Circuit for conspiracy cases. *See Delgado*, 256 F.3d at 272.

a.  Time

"An overlap in time periods between two alleged conspiracies favors a finding of a single conspiracy, especially when that overlap is substantial." *United States v. Rabhan*, 628 F.3d 200, 205 (5th Cir. 2010) (citation omitted) (finding a 21 month overlap to be substantial); *see also El-Mezain*, 664 F.3d at 546-47 (finding a four year overlap to be substantial); *Njoku*, 737 F.3d at 69 (finding a two year overlap to be substantial); *United States v. Brown*, No. 13-243, 2016 WL 1587353, at *4 (E.D. La. Apr. 20, 2016) (finding a three year overlap to be substantial). This factor also favors a finding of a single conspiracy where one conspiracy is "wholly contained

---

[2] Counts 4 and 5 also charge Ritchey with conspiracy in connection with the PPE scheme, but the Fifth Circuit has recognized that under *Blockburger* a conspiracy charged under 18 U.S.C. § 1349 is not the same offense as a conspiracy charged under 18 U.S.C. § 371. *See United States v. Jones*, 733 F.3d 574, 584 (5th Cir. 2013); *United States v. Khan*, 638 F. App'x 380, 381 (5th Cir. 2017).

within the time period" of another conspiracy. *El-Mezain*, 664 F.3d at 546-47; *see also United States v. Addison*, No. 14-168, 2015 WL 1271278, at *7 (E.D. La. Mar. 19, 2015).

Here, the Superseding Indictment [33] alleges that Ritchey participated in the PPE scheme from January 2020 until April 17, 2020, and that he "conspired to and engaged in" the invoice backdating scheme from October 2018 through April 2020. Sup. Ind. [33] at 1-2; *see also id*. at 23, 26. Thus, it alleges that there was an approximately three-and-half month overlap between the conspiracies and that the PPE scheme was entirely contained in the time period that the invoice backdating scheme took place. *Id*. at 23, 26. This overlap between the schemes is significantly less than the Fifth Circuit has endorsed as substantial, but the duration of the PPE scheme was wholly contained in the time period of the invoice backdating scheme. Based on the foregoing, the Court finds that this factor is essentially neutral, neither weighing in favor of or against a finding of a single conspiracy.

b.   Co-Conspirators

Just as an overlap in time can signal a single conspiracy, so can "an overlap in personnel participating in the conspiracy." *Rabhan*, 628 F.3d at 205 (citation omitted). However, "[i]f the central figures of the cases are different, or if they serve different functions for the purposes of the conspiracies, it is less likely that there is a single agreement." *El-Mezain*, 664 F.3d at 547 (citation omitted).

The Superseding Indictment [33] alleges that Ritchey "operated and controlled" GCPP and was intimately involved in both schemes, thereby making

him a central character in both conspiracies. Sup. Ind. [33] at 11; *id*. at 13-17; *id*. at 17-23. For the PPE scheme, Ritchey allegedly conspired with Co-Conspirator 1, GCPP's warehouse manager, Co-Conspirator 2, a GCPP warehouse employee, Co-Conspirator 3, GCPP's head buyer, and Co-Conspirators 4-11, GCPP sales representatives. *Id*. at 11, 26. As part of this scheme, Ritchey purportedly directed Co-Conspirators 1 and 2 and GCPP's sales representatives to purchase PPE and other designated scarce materials. *Id*. at 18. After acquiring these materials, GCPP's sales representatives, at Ritchey's direction, "made false and fraudulent pretenses, representations, and promises" to healthcare providers that inquired about purchasing these materials from GCPP and sold them at prices exceeding the prevailing market rate. *Id*. at 26-27; *id*. at 21-23.

For the invoice backdating scheme, Ritchey allegedly conspired with Co-Conspirator 1, Co-Conspirator 3, and Co-Conspirator 12, a GCPP sales representative. *Id*. at 11, 24. Notably, Co-Conspirator 12 is not alleged to have played a role in the PPE scheme but purportedly served as a prominent character in the invoice backdating scheme. *See id*. at 24, 26. According to the Superseding Indictment [33], the pharmacies involved in this scheme each contacted Co-Conspirator 12 and requested assistance in complying with an audit. *Id*. at 14-16. Co-Conspirator 12 brought these requests to Ritchey who purportedly approved the creation of the backdated invoices. *Id*. at 15-16. Co-Conspirator 1 allegedly created the fake invoices which were then transmitted by either Co-Conspirator 12 or Co-

Conspirator 3 to the Pharmacy Benefit Mangers ("PBMs")[3] performing the audits. *Id*.

There is some overlap between the characters involved in each scheme, with Ritchey, Co-Conspirator 1, and Co-Conspirator 3 playing a role in both conspiracies. The Superseding Indictment [33] alleges that Ritchey performed a similar function in each scheme, in that he directed and approved his co-conspirators' actions. On the other hand, Co-Conspirators 1 and 3 played different roles in each scheme.

In the PPE scheme, Co-Conspirator 1 was part of a large group that was directed "to identify and purchase PPE and other designated materials." *Id*. at 18. Co-Conspirator 1 is also alleged to have directed GCPP employees to "identify and purchase N-95 masks." *Id*. Other than communicating about states to avoid selling these goods in, there is no further reference in the Superseding Indictment [33] to the role that Co-Conspirators 1 and 3 played in the PPE scheme. *See id*. at 17-23. In the invoice backdating scheme, Co-Conspirators 1 and 3 were part of a small group involved in vetting and producing the backdated invoices. Co-Conspirator 12 brought the pharmacies' requests for audit assistance to Co-Conspirator 3, as well as to Ritchey. *Id*. at 15-16. After Ritchey approved the requests, Co-Conspirator 1 created the fake invoices that were transmitted to the auditors by Co-Conspirators 3 and 12. *Id*.

---

[3] PBMs administer pharmacy programs, which provide "direct prescription drug coverage to eligible [private health insurance company] members." Sup. Ind. [33] at 8. PBMs are responsible for "adjudicating and processing payments for prescription drug claims submitted by eligible pharmacies" and for auditing "participating pharmacies." *Id*.

Although there was some overlap between the personnel involved, Ritchey is the only person whose role was substantially similar in both schemes. Co-Conspirators 1 and 3 played some role in acquiring the materials involved in the PPE scheme, but so did eight other GCPP employees. In addition, there is no allegation that either made the misrepresentations at the heart of the PPE scheme. *See id*. at 26-27; *see also id*. at 21-23 (alleging that GCPP's "sales representatives" made numerous material misrepresentations). In contrast, the invoice backdating scheme involved a smaller group and Co-Conspirators 1 and 3 performed certain tasks, producing and transmitting the purportedly false invoices, which were at the heart of the scheme. *Id*. at 14-16; *see also El-Mezain*, 664 F.3d at 547 (noting the "limited number of participants" in one of the conspiracies in evaluating this factor). The Court concludes that Co-Conspirators 1 and 3 served different functions in these schemes, which indicates that there was more than one conspiracy. *See Njoku*, 737 F.3d at 70 ("That the two men served different functions in each scheme supports the finding that two conspiracies existed.").

In addition, Co-Conspirator 12 played a central role in one scheme and had no involvement in the other. Co-Conspirator 12 served as the point of contact for the pharmacies involved in the invoice backdating scheme and played a role in GCPP fabricating invoices for these pharmacies. Sup. Ind. [33] at 14-16. Co-Conspirator 12 is not alleged to have played any role in the PPE scheme. *See id*. at 33. Based on the foregoing, the Court finds that this factor weighs in favor of finding the existence of two separate conspiracies.

c.   <u>Statutory offenses charged</u>

The Fifth Circuit has found this factor to favor a single conspiracy where the defendant was charged in two separate prosecutions with conspiracy under 18 U.S.C. § 1349 involving the same underlying offense. *See Njoku*, 737 F.3d at 70 (finding two prosecutions for conspiracy under 18 U.S.C. § 1349 to commit health care fraud through a violation of 18 U.S.C. § 1347 to "undermine the argument that two conspiracies existed"). Here, Ritchey is charged with conspiracy under 18 U.S.C. § 1349 to commit wire fraud in violation of 18 U.S.C. § 1343 in Counts 1 and 3. Sup. Ind. [33] at 24; *id.* at 26-27. However, he is also charged with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1347, in Count 1 and conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1341, in Count 3. Sup. Ind. [33] at 24; *id.* at 26-27.

Ritchey contends that this factor favors the finding of a single conspiracy because the Superseding Indictment [33] charges two of the same offenses, conspiracy to commit wire fraud, in Counts 1 and 3. Mot. [93] at 8. The Government counters that these Counts require proof of different elements because proof of a different underlying fraud offense is required for each Count. Resp. [105] at 8-9. On this issue the Court finds the Fifth Circuit's decision in *Rabhan* instructive.

In *Rabhan*, the defendant was charged in both cases "with a § 371 conspiracy to defraud an FDIC-insured bank and a United States government agency through violation of 18 U.S.C. § 1014, by making false statements to influence the actions of a federally insured institution." *Rabhan*, 628 F.3d at 207. In one case, the

indictment and bill of information "also included an underlying § 1344 bank fraud offense." *Id*. The Fifth Circuit found that this factor weighed in favor of a single conspiracy "because the overlap in statutory offenses is almost identical and the statutes that do not overlap are related." *Id*.; *see also United Stated v. Levy*, 803 F.2d 1390, 1395 (5th Cir. 1986) (finding a sufficient overlap in the offenses charged to weigh this factor in favor a single conspiracy where the defendant was charged in one indictment with conspiracy under § 371 "to make false statements and to misapply funds, in violation of 18 U.S.C. §§ 1014 and 656," and in another indictment with conspiracy under § 371 "to make false statements and to defraud the United States of America and the Federal Deposit Insurance Corporation" in violation of 18 U.S.C. § 1014).

Counts 1 and 3 charge Ritchey with a violation of the same statutory offense. Sup. Ind. [33] at 24; *id*. at 26-27. Each Count also charges Ritchey with conspiring to commit an additional offense and, while the statutes for these offenses are not the same, they are related. 18 U.S.C. §§ 1347 and 1341 both criminalize the use "false or fraudulent pretenses, representations, or promises" in different contexts. 18 U.S.C. §§ 1347 and 1341. As such, the Court finds that this factor weighs in favor of the existence of a single conspiracy.

d.    Nature and scope of the activity

Under this factor, "[t]he court must review the entire record and take a commonsense approach in determining the substance of each alleged conspiracy." *Levy*, 803 F.2d at 1395; *see also Njoku*, 737 F.3d at 71 (applying *Levy*). Overlapping

acts are not required to prove a single conspiracy, but "the 'nature and scope of the allegedly separate conspiracies' must permit a finding that there was a single objective and a single agreement." *El-Mezain*, 664 F.3d at 549 (quoting *Rabhan*, 628 F.3d at 207).

Ritchey argues that the Superseding Indictment [33] "combines" the PPE and invoice backdating schemes and charges one "overarching" conspiracy. Mot. [93] at 6-7. Ritchey points the Court to the general overview paragraph of the Superseding Indictment, which alleges that:

> [f]rom approximately October 2018 through April 2020, RITCHEY and his coconspirators, through GCPP, engaged in a series of fraudulent schemes to sell high adjudication pharmaceutical and other health care products, typically in short supply and in high demand, at prices well above the market price. In some instances, RITCHEY and his co-conspirators effectuated the scheme by making false statements and/or omissions to health care providers [the PPE scheme], including misrepresentations concerning the false statements and or omissions to health care providers, including misrepresentations concerning the price and availability of PPE. In other instances, they effectuated the schemes by making false and fraudulent statements to Health Insurance Companies, including to mislead insurance auditors, in exchange for selling product [the invoice backdating scheme].

*Id.* at 6 (alterations in original) (emphasis removed) (quoting Sup. Ind. [33] at 12). In addition, Ritchey notes that the purported purpose of each scheme was for he and his Co-Conspirators "to unlawfully enrich themselves." *Id.* at 6-7 (quoting Sup. Ind. [33] at 13, 17, 27, 28, 32, 35).

The Government responds that the factual allegations supporting Counts 1 and 3 are distinct. Resp. [105] at 9. Specifically, it asserts that the factual allegations underpinning the PPE scheme and invoice backdating scheme are

16

separated into different paragraphs of the Superseding Indictment. *Id*. The Government also contends that the victims of each scheme are different and that the witnesses and exhibits offered to prove each scheme will be different. *Id*.

The Superseding Indictment [33] portrays the PPE scheme and invoice backdating scheme as distinct conspiracies supported by different factual allegations and details. It provides background information on the PPE Scheme that explains the onset of the COVID-19 pandemic, the declaration of a national emergency, the United States Department of Veterans Affair ("VA")'s involvement, the price at which Government contractors sold N-95 masks before the pandemic, and the relevant entities and individuals involved. Sup. Ind. [33] at 2-7. It then states in detail the manner and means by which Ritchey and his Co-Conspirators executed the PPE scheme, including: (1) the identification and procurement of PPE and other designated scarce materials; (2) the allegedly false and fraudulent misrepresentations Ritchey and co-conspirators made to potential purchasers of these materials; (3) who purchased these materials; and (4) the means by which these purchases were completed. *Id*. at 18-23. Finally, in Count 3 it charges Ritchey with a conspiracy under 18 U.S.C. § 1349 to commit wire and mail fraud in violation of 18 U.S.C. §§ 1343 and 1341, and it incorporates the relevant factual background and manner and means sections of the Superseding Indictment [33]. *Id*. at 26-27.

In support of the invoice backdating scheme, the Superseding Indictment [33] explains the role that private insurance companies played, the function of PBMs, PBMs' relationships with health care providers, the reimbursement process, and the

particular entities and individuals involved in this scheme. *Id*. at 8-11. It then describes: (1) how each pharmacy contacted GCPP; (2) the decision to produce allegedly fake invoices; (3) how the invoices were produced; and (4) who transmitted them to the PBMs. *Id*. at 13-17.  Count 1 incorporates these portions of the Superseding Indictment [33] and charges Ritchey with a conspiracy under 18 U.S.C. § 1349 to commit health care and wire fraud in violation of 18 U.S.C. §§ 1347 and 1343. *Id*. at 23-25.

After thoroughly reviewing the Superseding Indictment [33], the Court finds that the Government intended to punish separate activities because the conduct involved in each scheme is different. The PPE scheme involved the procurement and sale of PPE to VA facilities and private health care systems for a price exceeding the prevailing market price, whereas the invoice backdating scheme involved the fabrication of invoices to subvert audits performed on GCPP's customers. Other than the purported monetary motivation and some of the individuals involved, the factual allegations supporting these scheme do not overlap. On this point, Ritchey concedes "that the conduct described in Count 1 and Count 3 is not the same." Reply [99] at 8.

In addition, the victims of each scheme and the evidence offered to prove each scheme are, and will be, different. For the PPE scheme, the Superseding Indictment [33] alleges Ritchey and his co-conspirators "engaged in a scheme and artifice to defraud" the VA and other health care providers by selling PPE and other designated materials at excessive prices. Sup. Ind. [33] at 17. To prove this scheme,

the Government plans to introduce "PPE purchase records and sale records" and offer testimony from VA representatives. Resp. [98] at 9. With respect to the invoice backdating scheme, the Superseding Indictment [33] alleges that Ritchey and his co-conspirators defrauded private health insurance companies by producing, facilitating, and concealing "false and fraudulent claims" submitted to these companies. *Id*. at 13. For this scheme, the Government plans to call "program witnesses" and submit the backdated invoices, as well as purchase records for the products at issue. Resp. [98] at 9. These differences also suggest multiple conspiracies. *See Addison*, 2015 WL 1271278, at *10 (weighing this factor in favor of multiple conspiracies based in part on the "the government's assertion that it will prove the conspiracy in this case against [the defendant] with 'extensive' evidence not at issue" in the other case).[4]

Ritchey's argument that the Superseding Indictment [33] charges one overarching or ongoing conspiracy is unpersuasive. Mot. [93] at 6-8. Ritchey cites one paragraph in the Superseding Indictment [33] that summarizes the different schemes to support this position, but ignores the manner in which the schemes are

---

[4] The Court finds that Ritchey makes some conflicting arguments on this issue which are unavailing. In his Motion [93], Ritchey argues that the incriminating statements elicited by Co-Conspirator 3 with respect to the invoice backdating scheme will be used as indirect evidence to prove the PPE scheme because "the same set of facts will certainly be used to prove all of the charges." Mot. [93] at 8. But Ritchey has not shown how any statements about the invoice backdating scheme would tend to prove the PPE scheme. In his Reply [99], Ritchey asserts that the Court, in applying the *Blockburger* test, should only look to the statutory elements and not to the proof that the Government will present at trial. *Id*. at 7-8 (quoting *United States v. Regensberg*, 604 F. Supp. 2d 625, 632 (S.D.N.Y. 2009)). This argument directly contradicts the argument offered in Ritchey's Motion [93] and relies on authority that the Court finds unpersuasive. Regardless, the Court would reach the same conclusion even if it did not consider the difference between the evidence the Government plans to offer to prove each scheme.

set forth separately throughout the remainder of the Superseding Indictment [33]. *Id.* at 6. The charging document details these schemes in separate sections with clear titles to demonstrate that there are two distinct conspiracies involved. *See* Sup. Ind. [33] at 13, 17. Moreover, other than referencing these different schemes in one paragraph, Ritchey has not shown that the schemes were related or that one scheme advanced the other. *See, e.g., Rabhan*, 628 F.3d at 208 (finding factor to favor a single conspiracy where the schemes were "interrelated" with each other); *United States v. Cihak*, 137 F.3d 252, 258 (5th Cir. 1998) (finding two separate conspiracies in part because "the overt acts alleged in the two cases are different and . . . the actions of the separate conspiracies alleged in the other case did not advance the conspiracy alleged in this case and vice versa") (internal quotation marks and citation omitted). The Court finds that this factor weighs in favor of finding two separate conspiracies.

e.   Places

"When conspiracies overlap geographically, it is appropriate to consider where they are based as an indicator of whether the geographic overlap is significant." *El Mezain*, 664 F.3d at 550 (internal quotation marks omitted) (quoting *Rabhan,* 628 F.3d at 208). In *Rabhan*, the Fifth Circuit found that the "base of operations" for both conspiracies was in Georgia and Mississippi, because "the central co-conspirators created plans and made false representations" in these locations. *Rabhan,* 628 F.3d at 208 (internal quotation marks omitted). Thus, it

concluded that geographic overlap was significant and weighed this factor in favor of a single conspiracy. *Id.*

Here, the conspiracies overlap geographically. Counts 1 and 3 allege that Ritchey and his co-conspirators engaged in the schemes to defraud in Jackson County, Mississippi, and "elsewhere." Sup. Ind. [33] at 24, 26. The Superseding Indictment [33] also states that GCPP maintained a warehouse in Jackson County, Mississippi, and a sales office in Broward County, Florida. *Id.* at 10-11. Although the Superseding Indictment [33] references other locations where the different schemes occurred, Ritchey and his Co-Conspirators appear to be based in these two locations. Accordingly, the Court finds that "the geographic overlap between the bases of operation of the two schemes is significant and favors a finding of a single conspiracy." *Rabhan,* 628 F.3d at 208

In sum, after reviewing the allegations in the Superseding Indictment [33] and applying all of the factors identified by the Fifth Circuit, the Court concludes that the Superseding Indictment [33] sets forth two factually distinct conspiracies and charges separate offenses in Counts 1 and 3. On balance, the Court finds that the difference in the Co-Conspirators involved in each scheme and the differing roles of those involved in both, as well as the distinctive activity that the Government seeks to punish, all outweigh any similarities between the statutory elements and locations of the conspiracies. *See Njoku*, 737 F.3d at 72 (holding that two conspiracies existed "because of the separate functions that central co-

conspirators provided in each scheme and the distinctive activity that the Government sought to punish in each case").

The Court finds that Counts 1 and 3 charge separate offenses under the *Blockburger* test and that Ritchey's Sixth Amendment right to counsel did not attach for the charges relating to the invoice backdating scheme until the Grand Jury returned the Superseding Indictment [33]. Ritchey's Motion [93] to Suppress should be denied to the extent it seeks to suppress any incriminating statements obtained in relation to the invoice backdating scheme.[5]

B.   Mississippi Rules of Professional Conduct

1.   Relevant legal standard

28 U.S.C. § 530B(a) provides that "an attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State." 28 U.S.C. § 530B(a). This statute makes the Mississippi Rules of Professional Conduct applicable to counsel for the Government in this case. *See id.*; *see also* L.U. Civ. R. 83.5 (making the Mississippi Rules of Professional Conduct binding on any "attorney who makes an appearance in any case in the district court").

Mississippi Rule of Professional Conduct 4.2 prohibits a lawyer representing a client from communicating "about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the

---

[5] Ritchey has not identified any specific recording made by Co-conspirator 3 wherein he made incriminating statements about the PPE scheme. See Mot. [93]; Reply [99].

lawyer has the consent of the other lawyer or is authorized by law to do so." Miss. R. Prof. Conduct 4.2. In the criminal context, the Fifth Circuit has opined that "[s]uch professional disciplinary rules do not apply to government conduct prior to indictment . . . and certainly do not apply to the indiscretions of a non-attorney government informant." *United States v. Johnson* 68 F.3d 899, 902 (5th Cir. 1995); *see also United States v. Diaz*, 941 F.3d 729, 739 (5th Cir. 2019) ("[T]here is no Fifth Circuit precedent holding that a government's use of a co[-]conspirator to record conversations with a subject of investigation in a non-custodial, pre-indictment setting constitutes a violation of a state bar's no-contact rule.").

2.    Analysis

Ritchey contends that the Government violated Mississippi Rule of Professional Conduct 4.2 by directing Co-Conspirator 3 to record their conversations because it knew Ritchey was represented by counsel. Mot. [93] at 13-14. At a minimum, Ritchey requests suppression of any recordings made after May 13, 2021, when the Government met with Ritchey's counsel to discuss the invoice backdating scheme, because the Government was aware at this point that Ritchey was represented by counsel for any potential charges arising from this scheme. *Id.* at 14.

The Fifth Circuit has made it clear that state bar professional disciplinary rules are inapplicable to the Government's pre-indictment conduct. *See Johnson* 68 F.3d at 902; *Diaz*, 941 F.3d at 739; *United States v. Heinz*, 983 F.2d 609, 613 (5th Cir. 1993) (recognizing that the prior version of American Bar Association ("ABA") Rule 4.2 did not apply "during the investigative process before the initiation of

criminal proceedings") (quotation omitted)). Specifically, the Fifth Circuit has held that a co-conspirator recording the "subject of [an] investigation in a non-custodial, pre-indictment setting" does not violate Mississippi Rule of Professional Conduct 4.2. *Diaz*, 941 F.3d at 739.

Based on this authority, and because the Court has found that the PPE and invoice backdating schemes were different, the Government did not violate Mississippi Rule of Professional Conduct 4.2 or 28 U.S.C. § 530B(a). On May 11, 2021, the Government directed Co-Conspirator 3 to record his conversations with Ritchey. At this time Ritchey had only been indicted on the charges relating to the separate PPE scheme. *See* Ind. [3]. Ritchey was not indicted on backdating charges until September 21, 2021, long after Co-Conspirator 3 returned the recording equipment to the Government. *See* Sup. Ind. [33]; Ex. 3 [93-3] at 10. As such, Co-Conspirator 3's pre-indictment conduct, with respect to the backdating scheme, did not violate Rule 4.2 because it was authorized by law. *See* Miss. R. Prof. Conduct 4.2; *Diaz*, 941 F.3d at 739.

Ritchey argues that the recordings "were made in relation to the same offense charged in the original indictment" because Counts 1 and 3 charge the same offense, Reply [99] at 10, but the Court has already rejected this argument. Ritchey also argues that the Government violated Rule 4.2 because it was aware that he was represented on the charges flowing from the invoice backdating scheme after meeting with his counsel on May 13, 2021. Mot. [93] at 14; Reply [99] at 10. This argument is not well-taken because the Government was not constrained by Rule

24

4.2 in the investigatory actions it could take with respect to charges for which Ritchey had not yet been indicted. *See Johnson* 68 F.3d at 902; *Diaz*, 941 F.3d at 739; *Heinz*, 983 F.2d at 613. Moreover, the Mississippi Rules of Professional Conduct do not apply to Co-Conspirator 3. *See Johnson* 68 F.3d at 902. For these additional reasons, the Court finds that Ritchey's Motion [93] to Suppress should be denied.

C.     Ritchey's request for a hearing

Ritchey requests a hearing to ensure "that each recording . . . [obtained] in violation of his Sixth Amendment right is identified and removed from the evidence obtained by the government during its investigation, and any evidence obtained by the government through its use of these illegal recordings is also suppressed." Mot. [93] at 15. A hearing on a motion to suppress is "only required where the movant alleges sufficient facts which, if proven, would justify relief." *United States v. Smith*, 977 F.3d 431, 435 (5th Cir. 2020) (internal quotation marks omitted) (quoting *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983)).

Ritchey has not pointed to any sufficient factual disputes and he even concedes that an evidentiary hearing is unnecessary if the Court resolves the legal questions presented by his Motion [93]. Reply [99] at 3 ("An evidentiary hearing would be unnecessary only if the Court found that the alleged PPE and Backdating Schemes were so completely different that they could not be considered the same scheme or conspiracy."). Having found that the Superseding Indictment [33] charges two separate conspiracies and that the Government did not violate any professional

disciplinary rule, the Court has resolved the legal questions presented by Ritchey's Motion [93] and hearing is not necessary. *See Diaz*, 941 F.3d at 740 (affirming the district court conclusion that an evidentiary hearing was not necessary "because the issue of the recordings presented legal questions, and [the defendant] had 'not articulated any factual disputes' for the district court to resolve") (quotation omitted).

### III.   CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Kenneth Bryan Ritchey's Motion [93] to Suppress is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 27th day of July, 2022.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE