IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| § | |
| v. § | No. 1:21-cr-6-HSO-RPM-1 |
| § | |
| § | |
| § | |
| KENNETH BRYAN RITCHEY § | |

**MEMORANDUM OPINION AND ORDER DENYING THE GOVERNMENT'S MOTION [103] FOR REVIEW OF MAGISTRATE JUDGE'S ORDER [97]**

BEFORE THE COURT is the Government's Motion [103] for Review of the Magistrate's Judge's Order [97], which granted in part and denied in part Defendant Kenneth Bryan Ritchey's Motion [72] for Injunction and for Return of Property. This Motion is fully briefed. After due consideration of the Motion [103], the parties' submissions, the record, and relevant legal authority, the Court finds that the Motion [103] should be denied and that the Magistrate Judge's Order [97] should be affirmed.

I. BACKRGOUND

A. Factual background

In April 2020, the United States Government began investigating the involvement of Gulf Coast Pharmaceuticals Plus, LLC ("GCPP") in an alleged scheme to defraud the United States through hoarding "designated scare materials" and selling those materials "at prices in excess of prevailing market prices" to healthcare facilities, including facilities operated by the United States. Sup. Ind.

[33] at 1-2. On April 15, 2020, the Magistrate Judge signed a premises search warrant for GCPP which permitted law enforcement to search and seize PPE, documentary evidence, electronic devices, and electronically stored information. Ex. 2 [72-2] at 1, 5-7. On April 17, 2020, agents with the Federal Bureau of Investigations ("FBI") and partner agencies executed the search warrant, during which forensic agents with the Homeland Security Investigations ("HSI") imaged thirteen hard drives and two servers located at GCPP. Ex. 4 [72-4] at 16. The Government sent the images to its self-designated filter team, which was composed of members of the United States Department of Justice Fraud Section's Special Matters Unit. Mot. [103] at 5.

GCPP's corporate counsel, Erich Nichols ("Nichols"), was present during this search and was asked by a member of the Government's prosecution team to provide a list of all current or former attorneys employed by GCPP and Ritchey. Ex. 1 [81-1] at 3. On April 27, 2020, Nichols provided the Government with this list and was informed that it would be passed along to the Government's filter team. *Id*. at 2-4.

On February 23, 2021, Bennett Starnes ("Starnes") a Department of Justice attorney, sent a letter to Ritchey's counsel in which he identified himself as a member of the filter team, and explained that he was transmitting a copy of all of the materials seized from the April 17, 2020, search. Ex. 2 [81-2] at 2. Starnes advised that this material was "subject to [an] ongoing filter review" by members of the filter team and that no members of the prosecution team had reviewed any of

2

the material. *Id.* at 3. Starnes's letter did not disclose any additional details about the filter team or its protocol. *Id.* On March 10, 2021, Nichols confirmed that he had received the seized materials, Ex. 3 [81-3] at 3, and the Government represents that the filter team began reviewing this evidence that same day, Resp. [81] at 3; *see also* Mot. [103] at 6.

On May 7, 2021, the filter team concluded its review of the seized materials and released all documents that it determined were non-potentially privileged material ("non-PPM") to the prosecution team. Resp. [81] at 3; Mot. [103] at 6-7. The filter team distributed these materials to the prosecution team without any notice to Ritchey. Mot. [103] at 6-7; Resp. [105] at 4; Ex. 3 [72-3] at 1.

On August 18, 2021, the Government applied for a search warrant to examine the thirteen hard drives and two servers belonging to GCPP for information relating to a different scheme, which allegedly occurred from August 2014 through April 17, 2020. Ex. 5 [72-5] at 4-5. The warrant application provided a general outline for the filter team's protocol:

> [w]ith respect to law enforcement's review of the digital evidence described in Attachment A, law enforcement (i.e., the federal agents and prosecutors working on this investigation and, prosecution), along with other government officials and contractors whom law enforcement deems necessary to assist in the review of the digital evidence (collectively, the "Review Team") are hereby authorized to review, in the first instance, the digital evidence and the information and materials contained in them, as set forth in this Attachment B. If law enforcement determines that all, some, or a portion of the information or materials in the digital evidence contain or may contain information or material subject to a claim of attorney-client privilege or work-product protection (the "Potentially Privileged Materials"), the Review Team is hereby ordered to: (1) immediately cease its review of the specific Potentially Privileged Materials at

3

> issue; (2) segregate the specific Potentially Privileged Materials at issue; and (3) take appropriate steps to safeguard the specific Potentially Privileged Materials at issue. Nothing in this addendum shall be construed to require law enforcement to cease or suspend the Review Team's review of the digital evidence upon discovery of the existence of Potentially Privileged Materials in the digital evidence.

*Id.* at 34. On August 18, 2021, the Magistrate Judge signed a search warrant authorizing the search of these devices and seizure of information related to this scheme, and the warrant was executed that same day. Ex. 4 [72-4] at 1-2. Shortly thereafter, the filter team began its review of these materials, but no documents from this second search have yet been released to the prosecution team. Mot. [103] at 4; Ex. 3 [72-3] at 1.

On December 2, 2021, Ritchey's current counsel sent a letter to Mr. Starnes raising for the first time the issue of attorney-client privilege with respect to the materials seized in the first and second searches. Ex. 6 [72-6] at 1. Ritchey's counsel specifically requested that Mr. Starnes disclose the identity of the members of the "investigative team" referenced in the second search warrant application and further requested that all privileged material that the filter team had uncovered be returned to Ritchey. *Id.* at 1-2. On December 17, 2021, Mr. Starnes replied and provided Ritchey's counsel with an excel spreadsheet with Bates numbers of the documents that had been released to the prosecution team, all of which related to the first search. Ex. 3 [72-3] at 1. He also confirmed that the only materials provided to the prosecution team were the documents from the first search that the filter team determined were non-PPM. *Id.* On January 14, 2022, Ritchey's counsel

sent Starnes another letter asking for details on the filter team's protocol. Ex. 7 [72-7] at 1. Over two months later, Starnes answered and provided the following explanation for the filter team's review:

> [w]e have used attorney-specific search terms and generic terms to identify material potentially subject to a claim of attorney client privilege, attorney work product, or other protection ("Potentially Protected Material["] or "PPM").

Ex. 8 [72-8] at 1.

B. <u>Procedural history</u>

On March 28, 2022, Ritchey filed a Motion [72] for an Injunction and the Return of Privileged Materials, Mot. [72], seeking an order under Federal Rule of Criminal Procedure 41(g) enjoining the Government's "continued and ongoing review" of the seized materials and the return of his privileged documents, *id*. at 1. On June 3, 2022, the Magistrate Judge entered an Order [97] granting in part and denying in part Ritchey's Motion [72]. Order [97]. The Magistrate Judge denied Ritchey's Motion [72] to the extent it sought the return of the seized materials. *Id*. at 5-7. Specifically, the Magistrate Judge found that Ritchey lacked standing to assert GCPP's privilege in the challenged documents and that he had only generally asserted his own privilege over the seized materials. *Id*. at 6. As such, the Magistrate Judge concluded that Ritchey's request for the return of the seized materials, "to the extent he has standing, fails for lack of specificity." *Id*. at 7.

The Magistrate Judge granted Ritchey's Motion [72] to the extent it sought to vacate the existing filter team protocol. *Id*. at 16. The Magistrate Judge applied a preliminary injunction standard in ruling on Ritchey's request to enjoin the

Government's filter review of the seized documents. *Id*. at 8 (citing *City of El Cenizo v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018)). Under the first prong, the Magistrate Judge found that Ritchey had a substantial likelihood of succeeding on the merits because the existing protocol inadequately protected his attorney client privilege. *Id*. at 13. In support of this finding the Magistrate Judge noted that: (1) "the Government unilaterally created [the] protocol and did not take steps to fully apprise Ritchey about this protocol"; (2) the "protocol vested the final privilege determination in the filter team"; and (3) "filter team's execution of the . . . protocol created the appearance of non-neutrality." *Id*. at 11-13 (citations omitted).

For the second prong, the Magistrate Judge found that there was a substantial threat that the current protocol will cause irreparable harm to Ritchey. The Magistrate Judge recognized that "an adverse party's review of privileged materials seriously injures the privilege holder," and noted that "it is highly likely that the prosecuting team will continue to possess some of Ritchey's personally privileged materials." *Id*. at 14 (quotation omitted). With respect to the third prong, the Magistrate Judge found that, on balance, the equities weighed heavily in Ritchey's favor. *Id*. at 15. The Court explained that the "substantial risk of harm to Ritchey's attorney-client privilege" outweighed the "comparatively small risk of harm to the government" if an injunction was granted. *Id*. at 15-16. Finally, the Magistrate Judge found that the public interest would be served by abandoning the current protocol and replacing it with one that adequately protects Ritchey's privilege. *Id*. at 16.

The Magistrate Judge ordered the prosecution team to "destroy any and all copies of . . . materials in their possession" and enjoined the filter team "from taking any additional action with the seized materials until [the] Court approves of a new filter team protocol." *Id.* at 17.

C.     The Government's Motion [103]

The Government has filed the present Motion [103] objecting to the Magistrate Judge's Order [97] and asking the Court to reverse it. Mot. [103] at 5. The Government argues that, contrary to the Magistrate's finding, its filter team did not make privilege determinations by separating PPM and non-PPM, and then releasing the non-PPM from the first search warrant to the prosecution team, because Ritchey still has the opportunity to assert his privilege over any of these documents. *Id.* at 9. It contends that the Magistrate's Order [97] "is . . . fundamentally at odds with" Rule 41 because the Rule does not "contemplate that an individual from whom property is seized is entitled to first receive possession of search warrant returns even before the Government reviews the material." *Id.* at 13.

The Government also argues that the Magistrate Judge erred in finding that Ritchey was not fully apprised of the filter team protocol. *Id.* at 13. It asserts that Ritchey has been aware that the Government has employed a filter team since the execution of the first search warrant, that a member of the filter team informed him again on February 24, 2021, that the seized materials were subject to an ongoing

7

filter review, and that the second search warrant application explicitly referenced the filter team protocol. *Id.* at 14.

Finally, the Government challenges the Magistrate Judge's finding that the filter team protocol did not provide Ritchey with an objections period. It maintains that Ritchey had over a year, from April 2020 to May 2021, or at least two months from the time the Government turned over a copy of the materials to Ritchey, to assert his privilege over the seized documents before they were released to the prosecution team, and that this constituted a sufficient objections period. *Id.* at 15.

D. <u>Ritchey's Response in Opposition [105]</u>

Ritchey responds that Magistrate Judge's Order [97] is neither clearly erroneous nor contrary to law. Resp. [105]. He maintains that the Magistrate correctly found that "the filter team makes a privilege determination when it releases material – even material that the filter team has unilaterally deemed to be non-PPM – to the prosecution team." *Id.* at 19. Ritchey further contends that the Order [97] is not contrary to Rule 41, because it "does not create an additional burden on the Government." *Id.* at 24. Instead, it "addresses the filter team's protocol and the fact that the protocol must be transparent to the defense counsel and to the court." *Id.* at 23.

Ritchey also argues that the Magistrate Judge correctly found that he was not fully apprised of the filter team's protocol. *Id.* at 10. On this point, Ritchey notes that "adequate notice that a filter team will be used at some point during the

8

prosecution is not the same as being reasonably and timely informed of the filter team's protocol in handling the seized material." *Id*. at 11.

In addition, Ritchey contends that Magistrate Judge correctly found that the Government's filter team protocol was flawed because it failed to provide him with an objections period. *Id*. at 13. Ritchey explains that once he received the seized materials on March 10, 2021, he only had two months to review over 200,000 documents before the Government unilaterally and without notice released the non-PPM to the prosecution team. *Id*. at 15. Ritchey argues that the Magistrate Judge considered this two-month period and nevertheless found "that the filter team did not provide Ritchey with an articulated objections period for what it deemed to be non-PPM." *Id*. at 16.

E.  The Government's Rebuttal

In rebuttal, the Government reasserts its argument that the Magistrate's Order [97] "mandates that the Government give a potential privilege holder the opportunity to object prior to the release of non-PPM to a [p]rosecution team unless the parties otherwise agree." Rebuttal [106] at 2. It contends that this rule "would impose a brand-new requirement for search warrants under Rule 41." *Id*. The Government also argues that Ritchey has had the seized material for sixteen months and failed to assert his privilege with respect to any specific document. *Id*. at 4.

9

II.  DISCUSSION

A.  Relevant legal standard

Under Federal Rule of Criminal Procedure 59(a), a party may file objections to an order entered by a magistrate judge within fourteen days of being served with a copy of the order. Fed. R. Crim. P. 59(a). "The district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." *Id*. An order is contrary law when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Ambrose-Frazier v. Herzing Inc.*, No. 15-1324, 2016 WL 890406, at *2 (E.D. La. Mar. 9, 2016) (applying this standard to review of magistrate judge's decision under Federal Rule of Civil Procedure 72(a)); *see also United States v. Melton*, 948 F. Supp. 2d 998, 1002 (N.D. Iowa 2013) (applying this standard in reviewing a magistrate judge's order under Federal Rule of Criminal Procedure 59(a)). An order is clearly erroneous "if, on the entire evidence, [the Court is] left with a definite and firm conviction that a mistake has been committed." *United States v. Marquez*, 685 F.3d 501, 508 (5th Cir. 2012) (quotation omitted). This is a "highly deferential standard" of review. *United States v. USPlabs, LLC*, No. 3:15-CR-496-L, 2019 WL 499101, at *5 (N.D. Tex. Feb. 8, 2019).

The Magistrate Judge employed a preliminary injunction standard to evaluate the sufficiency of the filter team's protocol in protecting Ritchey's attorney-client privilege. Order [97] at 3-4. To secure a preliminary injunction, the moving party must establish:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (quotation omitted); *see also In re Sealed Search Warrant and Application for a Warrant by Tel. or Other Reliable Elec. Means ("Optima")*, 11 F.4th 1235, 1248 (11th Cir. 2021) (applying a preliminary injunction standard to a post-indictment Rule 41(g) motion challenging the sufficiency of the filter team's protocol); *In re Search Warrant Issued June 13, 2019 ("Baltimore Law Firm")*, 942 F.3d 159, 170-71 (4th Cir. 2019) (same).

B.  Analysis

After reviewing the Order [97], the record, the parties' submissions, and relevant legal authority, the Court finds that the Magistrate Judge's Order [97] is neither contrary to law nor clearly erroneous. In concluding that Ritchey was entitled to a preliminary injunction, the Magistrate Judge found that the existing filter team protocol likely inadequately protected his attorney-client privilege. Order [97] at 11. The Magistrate Judge reasoned that the existing filter team protocol allowed the filter team to make final privilege determinations, did not allow Ritchey to object to the release of non-PPM to the prosecution team, and was executed in a manner that created the appearance of non-neutrality. *Id.* at 11-13.

In the absence of controlling Fifth Circuit precedent, the Magistrate Judge examined district court cases from this Circuit, as well as Circuit Court of Appeals and district court decisions outside the Circuit. *Id.* at 11-13. The Magistrate Judge

11

then applied the relevant case law to the facts of this case and concluded that Ritchey was entitled to a preliminary injunction. *Id.* at 11-16.

1. <u>Final privilege determination</u>

The Government objects to the finding that the existing filter team protocol makes final privilege determinations, arguing that the release of non-PPM to the prosecution team does not prevent Ritchey from later asserting his privilege over these documents. Mot. [103] at 6.

Although the Court agrees that Ritchey could later seek suppression or exclusion of such material, the Government's argument is unavailing because, as the Magistrate Judge explained, the release of seized materials to the prosecution still carries legal significance where the defendant is not provided an opportunity to object. *Id.* at 12. Whether evidence is privileged is ultimately a determination solely within the province of the judiciary. *Willy v. Admin. Review Bd.*, 423 F.3d 483, 500 (5th Cir. 2005) ("Indeed, when a party asserts that documents are privileged, the court must in the first instance inspect and review them to determine the applicability of the privilege."). By allowing the filter team to determine that certain documents were not privileged and to then unilaterally release them to the adverse party, the filter protocol improperly delegated a judicial function to the executive branch. *See Baltimore Law Firm*, 942 F.3d at 177 (recognizing that the filter team protocol "contravened that nondelegation principle" by "erroneously authoriz[ing] the executive branch - that is, the Filter Team - to make decisions on attorney client privilege"); *Optima*, 11 F.4th at 1251 (same).

In addition, by distributing these materials to the prosecution team, the filter team risked releasing materials that were privileged and potentially jeopardizing Ritchey's privilege. Even if Ritchey can later assert his privilege over these materials, any review of privileged materials by an adverse party "seriously injures the privilege holder." *Baltimore Law Firm*, 942 F.3d at 175. To avoid this issue, courts in this Circuit have traditionally required a Government filter protocol to allow the defendant an opportunity to challenge the filter team's privilege determination. *See United States v. Satary*, 504 F. Supp. 3d 544, 555 (E.D. La. 2020) ("Courts in this [C]ircuit require the pre-review process before non-PPM can be released to the Prosecution Team where the party or owner of the documents has a privilege to protect.") (collecting cases).

The Government attempts to distinguish the filter protocol used in this case from the cases the Magistrate Judge relied upon to conclude that the filter team release of non-PPM constituted a final privilege determination. Mot. [103] at 6-8 (citing *Heebe v. United States*, No. 10-3452, 2012 WL 3065445 (E.D. La. July 27, 2012; *United States v. Vepuri*, No. 21-132, 2021 WL 4860744 (E.D. Penn. Oct. 19, 2021). However, in both of those cases the district court found that the Government's protocol was flawed because it permitted the filter team to provide the prosecution team with materials it deemed non-privileged without "allowing the [defendant] a chance to disagree with the determination." *Heebe*, 2012 WL 3065445, at *4; *see also Vepuri*, 2021 WL 4860744, at 2 ("The Government's proposed procedure here is fatally flawed insofar as the filter team is permitted to provide to

13

the prosecution team all materials it deems not to be privileged without any opportunity for the defendant to mount a challenge."). The filter protocol here suffers from the same infirmity.

2. <u>Lack of objections period</u>

The Government also objects to the Magistrate Judge's finding that the filter team protocol failed to provide Ritchey with an objections period. Mot. [103] at 11-12. The Government contends that the Magistrate Judge "ignore[d] the factual record" because Ritchey had over a year after the Government executed the first search warrant, and two months after it provided him with the seized materials, to assert his privilege. *Id.*

The Magistrate Judge was presented evidence of this timeline and nevertheless found that the protocol failed to provide Ritchey with an opportunity to challenge the filter team's non-PPM designation. Order [97] at 12. Although Ritchey received the seized materials two months before they were released, the filter team turned the non-PPM over to the prosecution without allowing Ritchey the opportunity to object to the filter team's non-privileged determination. As stated earlier, the existing filter team protocol does not provide Ritchey with an objections period. *See Heebe*, 2012 WL 3065445, at *4 (holding that the privilege holder "must have a chance to dispute privilege determinations made by the clean team"); *In re Ingram*, 915 F. Supp. 2d 761, 763 (E.D. La. 2012) (approving a filter review protocol that allowed the defendant to challenge the filter team determination prior to releasing the material to the prosecution team).

Under the highly deferential standard applied to Rule 59(a) motions, the Court cannot say that the Magistrate Judge's reasoning is either contrary to law or clearly erroneous, or that it is left with a definite and firm conviction that a mistake has been made.

3. <u>Failure to fully apprise Ritchey of the filter protocol</u>

The Government also objects to the Magistrate Judge's finding that it failed to fully apprise Ritchey of the protocol. Mot. [103] at 13-14. The Government maintains that Ritchey was aware that it intended to employ a filter team from the inception of its investigation because it asked his corporate counsel, Nichols, for filter terms and informed Nichols that a filter team was reviewing the seized materials. *Id*. In addition, the Government notes that Mr. Starnes, a member of the filter team, informed Ritchey on February 21, 2021, that the seized materials were still under filter review and that the filter protocol was set forth in the second warrant application. *Id*. at 14.

The Magistrate Judge considered the Government's factual arguments but concluded that the existing protocol was not fully disclosed to Ritchey. The Magistrate Judge explained that the "filter team did not reveal any portion of its protocol" to Ritchey "until more than one year" after executing the first search warrant, Order [97] at 11, and that the filter team only partially disclosed its protocol in the second search warrant application, *id*. Having reviewed the record, the Court cannot say it is left with "a definite and firm conviction" that the

15

Magistrate Judge committed a mistake in this regard. *United States v. Marquez*, 685 F.3d 501, 508 (5th Cir. 2012).

4. Order [97] is contrary to precedent and Rule 41

The Government's next objection is that the Magistrate Judge's Order [97] "is contrary to the numerous courts that have upheld a filter team's ability to isolate potentially protected material and release non-potentially protected material." Mot. [103] at 12.

This argument is also unavailing because the Magistrate Judge's Order [97] does not contradict other courts' general approval of filter teams as a method for culling privileged materials. Instead, the Order [97] ensures that the protocol employed by the filter team in this case adequately protects Ritchey's attorney-client communications. Indeed, the Magistrate Judge recognized that filter teams are routinely employed by the Government to identify seized materials that are potentially privileged, Order [97] at 9-10, but he noted that a filter team protocol that does not allow a defendant to object to the filter team's privilege determinations undermines the protocol's adequacy, *id.* at 12.

The Magistrate Judge's reasoning is in line with cases from this Circuit as well as cases from outside the Circuit that require a Government's filter team protocol to contain an objections period. *See Heebe*, 2012 WL 3065445, at *4 (holding that "the proper protocol will allow for [the privilege holder] to make challenges to privilege determinations"); *In re Search of 5444 Westheimer Rd. Suite 1570, Houston, Tex., on May 4, 2006*, 2006 WL 1881370, at *2 (S.D. Tex. July 6, 2006)

16

(approving the filter team's protocol where the privilege holder had "the opportunity to challenge the taint team's privilege determination in Court before the documents are given to the prosecution team"); *United States v. Avenatti*, 559 F. Supp. 3d 274, 283-285 (S.D. N.Y. 2021) (approving the government's filter protocol where the defendant "was given an opportunity to review all communications before they were turned over to the prosecution team"); *Vepuri*, 2021 WL 4860744, at 2 (vacating the filter team protocol where it failed to provide the defendant with an objections period). Thus, the Magistrate Judge's Order [97] is consistent with the approach courts have required the Government to take before releasing non-potentially protected material to its prosecutors.

The Government next contends that the Magistrate Judge's Order [97] "is fundamentally at odds with Rule 41." Mot. [103] at 13. It argues that Rule 41 does not provide an individual whose property has been seized pursuant to a search warrant an opportunity to review the materials before the prosecution team has received possession of them. *Id*. It further maintains that the Order [97] creates new law which will "impair lawful investigations and not allow a prosecution team to timely access information to which it is legally entitled." *Id*.; *see also* Rebuttal [106] at 3.

The Court finds that the Magistrate Judge's Order [97] does not undermine the purpose of Rule 41, because it does not affect the Government's ability to seize property pursuant to a search warrant or to possess and review the seized materials prior to releasing them to the individual. Instead, the Order [97] merely provides

17

that the Government must allow a defendant an opportunity to object before the material is released to the prosecution team when "there is a high likelihood" that the seized material will contain a "significant volume of privileged materials." Order [97] at 10; *see also United States v. Jarman*, 847 F.3d 259, 266 (5th Cir. 2017) (recognizing that, in certain circumstances, "it is appropriate to screen privileged information"). This additional step may slightly delay Government prosecutions, but the Magistrate Judge recognized this potential inconvenience and found it to be outweighed by the "substantial risk of harm to Ritchey's [and other defendants] attorney-client privilege." Order [97] at 15.

5. <u>Waiver</u>

Finally, the Government argues for the first time that Ritchey waived his attorney-client privilege over the seized materials by failing to timely assert the privilege. Mot. [103] at 12. The Government did not present this argument to the Magistrate Judge, *see generally* Resp. [81], and the Fifth Circuit has held that "a party who objects to the magistrate judge's report [or order] waives legal arguments not made in the first instance before the magistrate judge," *Freeman v. Cnty of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998) (citation omitted); *see also Vitol, Inc. v. United States*, 30 F.4th 248, 257 n.31 (5th Cir. 2022) (applying the *Freeman* holding). As such, the Government abandoned this waiver argument by not raising it before the Magistrate Judge.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Government's Motion [103] for Review of the Magistrate's Judge's Order [97] is **DENIED** and the Magistrate's Order [97] is **AFFIRMED**. The parties are directed to comply with the Magistrate Judge's Order [97].

**SO ORDERED AND ADJUDGED**, this the 27th day of July, 2022.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDG